Raymond FLOYD, an individual, et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

Sharon S. BUNDY, d/b/a Video Tracs; et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

V.S.D., INC., et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

Johnny T. ALLEN, Jr., d/b/a Prime Time Video, et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

BRAGG NEWS, INC., T/A Bragg News, et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

PARKER NEWS, INC., a North Carolina Corporation, et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

TRI-STATE NEWS, INC., T/A North Liberty Books, Plaintiff,

v.

Donald K. TISDALE, District Attorney for Twenty-First Judicial District, Defendant.

3712 BRAGG, INC., d/b/a Fountainhead News, et al., Plaintiffs,

v.

Lacy H. THORNBURG, et al., Defendants.

Nos. C-C-85-0542-P, C-C-85-544-M, ST-C-85-160-M, C-C-85-561-M, C-C-85- 560-M, and C-C-85-557-P to C-C-85-559-M.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 4, 1985.

Jeffrey S. Miller, Jacksonville, N.C., Louis L. Lesesne, Jr., Charlotte, N.C., William E. Seekford, Towson, Md., Robert E. Whitley, Kinston, N.C., Arthur M. Schwartz, Denver, Colo., for plaintiffs.

Edwin M. Speas, Jr., Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on the Plaintiffs' Complaint and application for a Temporary Restraining Order, Preliminary Injunction, and Declaratory Judgment that North Carolina House Bill 1171 is on its face, and together with Sections 14–190 et seq. as it is applied to the Plaintiffs herein, unconstitutional as violative of rights guaranteed to Plaintiffs by the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

A hearing was held on September 30, 1985 at Charlotte, North Carolina at which

all Plaintiffs were represented by counsel and the Defendants were represented by Ed Speas, North Carolina Department of Justice Attorney.

## DISCUSSION

North Carolina House Bill 1171 entitled, "An Act to Strengthen the Obscenity Laws of this State and the Enforcement of these Laws, to Protect Minors from Harmful Material That Does Not Rise to the Level of Obscenity, and to Stop the Sexual Exploitation and Prostitution of Minors" (hereinafter "The Act") was enacted by the General Assembly of North Carolina July 11, 1985, to become effective on October 1, 1985.

The Act substantially amended North Carolina General Statute Sections 14–190.1, 14–190.4, 14–190.5, 14–190.6, 14–190.7, 14–190.8; the Act repealed 14–190.2; 14–190.3. The Act deleted 14–190.10, 14–190.11, and 14–190.12 and replaced them with Sections 14–190.10, 14–190.11, 14–190.12, 14–190.14, 14–190.15, and 14–190.16. Article 26 of Chapter 14 was further amended by the Act to add Section 14–190.17.

The Plaintiffs have alleged jurisdiction of this Court under various statutes, Rule 57 of the F.R.C.P., and Article III, Section 2 of the U.S. Constitution.

The Plaintiffs are the operators of what they term "bookstores", "a business that sells books, films, video tapes, and periodicals, some of which are sexually explicit," and "video rental business," in which items are sold and rented which are sexually oriented and explicit.

The Defendants are Lacy H. Thornburg, Attorney General of North Carolina, various district attorneys and law enforcement officers.

The Plaintiffs complain, among other things, that the Act is unconstitutional and void for substantial vagueness, in that men must guess as to the meaning and differ as to the application thereof and is therefore repugnant to the due process provisions of the First, Fifth, and Fourteenth Amendments to the United States Constitution, are void for overbreath and therefore invade the area of protected freedoms in violation of the First and Fourteenth Amendments, are repugnant to the due process requirements of the First, Fifth, and Fourteenth Amendments to the United States Constitution, are repugnant to the provisions of the Fourth and Fourteenth Amendments in the prior restraint of First Amendment freedoms.

The Plaintiffs have not brought any action in the North Carolina State Courts. Instead, the Plaintiffs have petitioned the United States District Court to enjoin the enforcement of the Act and declare it unconstitutional under the United States Constitution. None of the Plaintiffs had been prosecuted as of September 30, 1985.

At the outset, we note that the United States Supreme Court has often pointedly recognized the high importance of the state interest in regulating the exposure of obscene materials to juveniles and unconsenting adults. But the Court has never declared those to be the only legitimate state interests permitting regulation of obscene material. The States have long recognized a legitimate interest in regulating the use of obscene material in local commerce and in all places of public accomodation. However, these regulations must not run afoul of specific constitutional prohibitions. In an unbroken series of cases extending over a long stretch of the United States Supreme Court's history, it has been accepted as a postulate that the primary requirements of decency may be enforced against obscene publications. There are legitimate state interests at stake in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure of juveniles. These include the interest of the public in the quality of life and the total community environment, the tone of commerce in the city centers, and, possibly the public safety itself. The Hill-Link Minority Report of the Commission on Obscenity and Pornography in 1970 indicates that there is at least an arguable correlation between obscene material and crime. A man may be

able to read an obscene book in his room, or expose himself indecently there. His privacy should be protected. But if he demands a right to obtain the books and pictures he wants in the market accessible to all, then to grant him his right is to affect the world about the rest of us, and to impinge on other privacies. *Paris Adult Theater I v. Slaton*, 413 U.S. 49 at pp. 57, 58, and 59, 93 S.Ct. 2628 at pp. 2635, 2635, and 2636, 37 L.Ed.2d 446 (1973).

*Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and following cases have established that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But that may not be done except under *extraordinary* (emphasis added) circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interferences with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.

The Plaintiffs here have offered nothing but their conclusions that, to quote from one Complaint, "14–190.1(c)(1) criminalizes as prohibited conduct 'oral intercourse' which is speech itself since both words together only relate to verbal discourse". Clearly, if given an opportunity no court will equate 'verbal discourse' with 'oral intercourse' under the statute. Another patently unsubstantiated charge by Plaintiffs is an allegation by Plaintiffs is that "enacting subsection (c)(3) and criminalizing depictions therein described, including persons 'clad in undergarments or in revealing or bizarre costume' has rendered the statute substantially overbroad." That's not what the statute says. What it says is: "Sexual conduct means ... (3) An act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a nude person or a person clad in undergarments or in revealing or bizarre constume." Obviously, that is quite different than what the Plaintiffs have alleged.

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. See, *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971 (1941)]. That is especially desirable where the questions of state law are enmeshed with federal questions. *Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105 [65 S.Ct. 152, 154, 89 L.Ed. 101 (1944)]. Here the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. Cf. *Thompson v. Magnolia Petroleum Company*, 309 U.S. 478, 483 [60 S.Ct. 628, 630, 84 L.Ed. 876 (1940)]. In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." *Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) citing *Railroad Comm. v. Pullman Co., supra, Spector Motor Co. v. McLaughlin, supra*, 323 U.S., 104–05, 65 S.Ct. 154. See *Leiter Materials, Inc. v. U.S.*, 352 U.S. 220, 228–29, 77 S.Ct. 287, 292–93, 1 L.Ed.2d 267 (1957).

■ The doctrine of abstention is to be invoked by a federal court when a state statute has not been previously construed or is susceptible of a construction by the state courts that would avoid or modify the constitutional controversy. See *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

None of the Plaintiffs in any of these actions have been indicted, arrested, or even threatened by a prosecutor.

There are allegations by the Plaintiffs that they are asking for declaratory relief to avoid acting at their peril since the Defendants will carry out their vowed intent to close Plaintiffs' establishments; that the Act constitutes an immediate threat of irreparable injury to Plaintiffs; that such impending enforcement will force those Plaintiffs that operate video stores as aforesaid, at risk of criminal indictment, to remove all sexually oriented and sexually explicit tapes from their respective stores ... that such impending enforcement will force those plaintiffs that operate bookstores as aforesaid, at the risk of criminal indictment, to close their respective business ...; that because the said provisions are susceptible of sweeping and improper application by officials and the Defendants herein and have an impermissible 'chilling and inhibiting effect' on the exercise of the Federal constitutional rights of citizens of the State of North Carolina and the United States as well as the Plaintiffs to exhibit...."

■ Feeling inhibited, even if true is not sufficient to bring into play the equitable jurisdiction of the Federal Courts. Persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate Plaintiffs in such cases. *Younger, District Attorney of Los Angeles County v. Harris, et al.,* 401 U.S. 37 at page 42, 91 S.Ct. 746 at page 749, 27 L.Ed.2d 669 (1971).

■ This Court does not accept the proposition that it is the duty of the Court to look over the shoulder of the State Legislature with a view to revising to the Court's satisfaction every Act passed by the Legislature. This is not what the Constitution or the Congress intended.

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: '[N]or shall a writ of injunction be granted to stay proceedings in any court of a state....' 1 Stat. 335, c. 22, § 5. A comparison of the 1793 Act with 28 U.S.C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act. During all this lapse of years from 1793 to 1970 the statutory exceptions to the 1793 congressional enactment have been only three: (1) 'except as expressly authorized by Act of Congress'; (2) 'where necessary in aid of its jurisdiction'; and (3) 'to protect or effectuate its judgments'." *Younger, supra,* at p. 43, 91 S.Ct. at p. 750.

Some of the Plaintiffs complain that the substantial vagueness and substantial overbreath of said statute will have a detrimental and chilling effect upon the exercise of First Amendment freedoms.

"The chilling effect can, of course, be eliminated by an injunction that would prohibit any prosecution whatever for conduct occurring prior to a satisfactory rewriting of the statute. But the State would then be stripped of all power to prosecute even the socially dangerous and constitutionally unprotected conduct that had been covered by the statute, until a new statute could be passed by the state legislature and approved by the federal courts in potentially lengthy trial and appellate proceedings. Thus, in *Dombrowski* itself, the Court carefully reaffirmed the principle that even in the direct prosecution in the State's own courts, a valid narrowing construction can be applied to conduct occurring prior to the date when the narrowing construction was made, in the absence of fair warning problems.

"Moreover, the existence of a 'chilling effect', even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. Where a statute does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment

rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so. *Schneider v. State*, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] (1939); *Cantwell v. Connecticut*, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213] (1940); *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217 [88 S.Ct. 353, 19 L.Ed.2d 426] (1967). Just as the incidental 'chilling effect' of such statutes does not automatically render them unconstitutional, so the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution." *Younger, supra*, 401 U.S., at p. 51, 91 S.Ct. at p. 754.

"Beyond all this is another, more basic consideration. Procedures for testing the constitutionality of a statute on its face and for then enjoining all action to enforce the statute until the State can obtain court approval for a modified version, are fundamentally at odds with the function of the federal courts in our constitutional plan. The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision; a statute apparently governing a dispute cannot be applied by judges, consistently with their obligations under the Supremacy Clause, when such an application of the statute would conflict with the Constitution. *Marbury v. Madison*, 1 Cranch 137 [2 L.Ed. 60] (1803). But this vital responsibility, broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws before the courts are called upon to enforce them. Ever since the Constitutional Convention rejected a proposal for having members of the Supreme Court render advice concerning pending legislation (footnote omitted) it has been clear that, even when suits of this kind involve a 'case or controversy' sufficient to satisfy the requirements of Article III of the Constitution, the task of analyzing a proposed statute, pinpointing its deficiencies, and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary. The combination of the relative remoteness of the controversy, the impact on the legislative process of the relief sought, and above all the speculative and amorphous nature of the required line-by-line analysis of detailed statutes, (citing cases) ordinarily results in a kind of case that is wholly unsatisfactory for deciding constitutional questions, whichever way they might be decided. In light of this fundamental conception of the Framers as to the proper place of the federal courts in the governmental processes of passing and enforcing laws, it can seldom be appropriate for these courts to exercise any such power of prior approval or veto over the legislative process." *Younger, supra*, 401 U.S., p. 53, 91 S.Ct. p. 754.

It is in the court's conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the nation's laws.

■ For these reasons, fundamental not only to our federal system but also to the basic functions of the Judicial Branch of the National Government under our Constitution, a federal court cannot properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights. There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown such as bad faith and harassment. *Younger, supra*, p. 53, 91 S.Ct. p. 755.

"It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whoever an effort might be made to apply it." *Younger, supra*, pp. 53 and 54, 91 S.Ct., pp. 754 and 755, *citing Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).

But, these are unusual circumstances which are non-existent at this juncture in this case. There has not been any enforcement here, much less harassment.

Now, turning to the specific charge by the Plaintiffs that the Statute is vague and overbroad, it is apparent from the discussion which was had between the Court and counsel that it is not so vague that "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma*, 413 U.S. 601 at p. 607, 93 S.Ct. 2908 at p. 2913, 37 L.Ed.2d 830 (1973), citing *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). See *Grayned v. City of Rockford*, 408 U.S. 104, 108–14, 92 S.Ct. 2294, 2298–2302, 33 L.Ed.2d 222 (1972); *Colten v. Kentucky*, 407 U.S. 104, 110–11, 92 S.Ct. 1953, 1957–58, 32 L.Ed.2d 584 (1972); *Cameron v. Johnson*, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968). Whatever other problems there are with the Act, it is all but frivolous to suggest that the Act fails to give adequate warning of what activities it proscribes or fails to set out, "explicit standards" for those who must apply it. Words inevitably contain germs of uncertainty and, there may be disputes over the meaning of some terms in the Act but there are limitations in the English language with respect to being both specific and manageably brief, and although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with without sacrifice to the public interest. *Broadrick v. Oklahoma*, 413 U.S. 601, p. 608, 93 S.Ct. 2908, p. 2913, 37 L.Ed.2d 830 (1973). See *Dombrowski v. Pfister*, 380 U.S. 479, 491–92, 85 S.Ct. 1116, 1123–24, 14 L.Ed.2d 22 (1965); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Williams v. United States*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945); *United States v. Wurzbach*, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930). It would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation. This practice also fulfills a valuable institutional purpose: it allows state courts the opportunity to construe a law to avoid constitutional infirmities. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

The First Amendment overbreadth doctrine is one of the few exceptions to this principle and must be justified by "weighty countervailing policies." The doctrine is predicated on the sensitive nature of protected expression: persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression. It is for this reason that courts have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity. *New York v. Ferber, supra*, at pp. 768, 769, 102 S.Ct. at pp. 3360, 3361, citing cases.

■ The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, courts have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort". *New York v. Ferber, supra*, at p. 769, 102 S.Ct. at p. 3361, citing, *Broadrick*, 413 U.S. 601 at 613, 93 S.Ct. 2908 at 2916, 37 L.Ed.2d 830 (1973). The Supreme Court has, in consequence, insisted that the overbreadth involved be "substantial" before the statute involved will be invalidated on its face. *New York v. Ferber, supra*, 458 U.S., at p. 769, 102 S.Ct. at p. 3361.

It is important to note, that while every statute may contain room for question and construction, if the legitimate reaches of the statute dwarf the arguably impermissible applications, and the Court assumes that state courts and state officers will not widen the possible invalid reach of the statute by giving it an overexpansive construction to its proscriptions, then the statute will not be invalidated for being overbroad or vague or both. See, *New York v. Ferber*, 458 U.S. 747, at 773, 102 S.Ct. 3348, at 3363, 73 L.Ed.2d 1113 (1982).

▮ Particularly where conduct and not merely speech is involved, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *New York v. Ferber*, 458 U.S. 747 at 770, 102 S.Ct. 3348 at 3361. Obscene material is not protected by the First Amendment as a limitation on the Police Power by virtue of the Fourteenth Amendment. *Paris Adult Theater I et al. v. Slaton*, 413 U.S. 49 at 54, 93 S.Ct. 2628 at 2633.

The requirement of substantial overbreadth is directly derived from the purpose and nature of the doctrine. While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation. "[W]ithout a substantial overbreadth limitation, review for overbreadth would be draconian indeed. It is difficult to think of a law that is utterly devoid of potential for unconstitutionality in some conceivable application." Note, 83 Harv.L.Rev. 844, n. 25 at 859 and n. 61. This observation appears equally applicable to the publication of books and films as it is to activities, such as picketing or participation in election campaigns, which have previously been categorized as involving conduct plus speech. There is no appreciable difference between the position of a publisher or bookseller in doubt as to the reach of the Act and the situation faced with respect to a State's restriction on partisan political activity as in *Broadrick v. Oklahoma, supra*. Indeed, it could reasonably be argued that the bookseller and film seller with an economic incentive to sell materials that may fall within the statute's scope, may be less likely to be deterred than the employee who wishes to engage in political campaign activity. Cf. *Bates v. State Bar of Arizona*, 433 U.S. 350, 380–81, 97 S.Ct. 2691, 2707–08, 53 L.Ed.2d 810 (1977) (overbreadth analysis inapplicable to commercial speech) *New York v. Ferber, supra.*

▮ This requirement of substantial overbreadth may justifiably be applied to statutory challenges which arise in defense of a criminal prosecution as well as civil enforcement or actions seeking a declaratory judgment. Cf. *Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974). Indeed, the Court's practice when confronted with ordinary criminal laws that are sought to be applied against protected conduct is not to invalidate the law *in toto*, but rather to reverse the particular conviction. *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). The Court recognizes however, that the penalty to be imposed is relevant in determining whether demonstrable overbreadth is substantial. The Court simply holds that the fact that a criminal prohibition is involved does not obviate the need for the inquiry or *a priori* warrant a finding of substantial overbreadth. See *New York v. Ferber*, 458 U.S. 747 at 772, 773, 102 S.Ct. 3348 at 3362, 3363.

The Plaintiffs' contention that the statute is overbroad simply will not wash. For example, as pointed out earlier, the Plaintiffs' allegation that Section 14–190.1(a)(1) criminalizes as prohibited conduct "oral intercourse" which is speech itself since both words together only relate to verbal discourse is a frivolous allegation pointing up the very sort of ridiculous contention by the Plaintiffs that is entirely unsubstantiated, and is an example of language which is fairly subject to an interpretation which

will avoid or modify the federal constitutional question.

The Plaintiffs have made no showing of 'special circumstances' requiring the Court to declare the Act unconstitutional for overbreadth.

But the Plaintiffs complain that the presence of the Act on the statute books and the threat of its being enforced seriously, irreparably damages the Plaintiffs because impending enforcement will force the Plaintiffs to close their doors or risk criminal indictment.

■ "In view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' (Citing *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)). Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the Plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. See, *e.g., Ex Parte Young, supra* [209 U.S.], at 145–47 [28 S.Ct. at 447–49]. Thus, in the *Buck* case, *supra* (*Watson v. Buck,* 313 U.S. 387) at 400 [61 S.Ct. 962 at 966, 85 L.Ed. 1416 (1941)] we stressed:

> Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. *Beal v. Missouri Pacific Railroad Corp.,* 312 U.S. 45, 49 [61 S.Ct. 418, 420, 85 L.Ed. 577 (1941)]."

*Younger v. Harris,* 401 U.S. 37 at p. 46, 91 S.Ct. 746 at p. 751.

■ In summary, the North Carolina appellate courts have never had the opportunity to construe or consider the Act and define its limits and interpret its provisions. The Statute touches delicate areas of State policy which the Federal Courts ought not to entertain if there is an alternative to a determination of its constitutionality. Such constitutional adjudication obviously can be avoided if definitive ruling on the state issues terminates the controversy. The Court is, therefore, of the opinion that it should abstain from deciding the constitutionality of the Act at this time.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the United States District Court abstain from deciding the issues of the constitutionality of North Carolina General Statute 14–190.1 *et seq.* while the parties seek a resolution in the North Carolina General Courts of Justice of the issues, presented to this Court.