Sharon HOFFMAN, Trudie Matthews, Diane Hoefling, Rev. Ronnie Wallace, and Rev. John Bradley, Plaintiffs,

v.

James B. HUNT, The State of North Carolina, D.R. Stone, and The Charlotte–Mecklenburg Police Department, Defendants.

No. 3:93–CV–393–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 22, 1994.

Raymond A. Warren, Charlotte, NC, for plaintiffs.

Ann Reed, David F. Hoke, North Carolina Dept. of Justice, Raleigh, NC, G. Michael Barnhill, Jim D. Cooley, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, for defendants.

### MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on Plaintiffs' complaint praying for a Declaratory Judgment and Plaintiffs' motions for a temporary restraining order and a preliminary injunction, filed December 6, 1993. Also before the Court are Defendants' (Hunt and North Carolina; collectively, the State's) motions to dismiss for Plaintiffs' lack of standing, failure to state a claim, lack of subject matter jurisdiction, and alternatively, to abstain, filed December 29, 1993. On January 3, 1994, Defendants D.R. Stone (the Police Chief) and the Charlotte–Mecklenburg Police Department also filed motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, and alternatively, to abstain. The Court heard oral argument on these motions on January 14, 1994.

The Court has carefully reviewed the complaint, Plaintiffs' and Defendants' briefs, and the arguments presented at the hearing. The Court has also undertaken a thorough review of the affidavits and other exhibits, as well as the applicable case law. Based upon the Court's review of this case at the present stage, the Court makes the following conclusions.

## THE COMPLAINT

Plaintiffs are citizens who believe legalized abortion is murder. Because of their moral objections to abortion, Plaintiffs have engaged in, and hope to continue conducting, a broad array of remonstrative and informative activities outside abortion clinics. Plaintiffs' efforts outside the abortion clinics have taken on various forms such as "protest marches, leafletting, display of signs and placards, sidewalk counseling, organized picketing, writing and distributing literature, and engaging individuals in conversation about the abortion of human fetuses." Complaint ¶ 10, p. 4.

Plaintiffs believe N.C.G.S. § 14–277.4, a statute which criminalizes certain forms of civil protest, interferes with several of their constitutionally protected rights. Consequently, Plaintiffs brought this action under 42 U.S.C. § 1983 seeking a declaration by this Court that N.C.G.S. § 14–277.4 is unconstitutional and requesting injunctive relief so that they may continue their public dissent against legalized abortion without fear of criminal prosecution. N.C.G.S. § 14–277.4 provides in relevant part:

> (a) No person shall obstruct or block another person's access to or egress from a health care facility of from the common areas of the real property upon which the facility is located in a manner that deprives or delays the person from obtaining or providing health care services in the facility.
>
> (e) This section shall not prohibit any person from engaging in lawful speech or picketing which does not impede or deny another person's access to health care services or to a health care facility or interfere with the delivery of health care services within a health care facility.
>
> (h) Persons subject to the prohibitions in subsection (a) of this section do not include owners, officers, agents, or employees of the health care facility or law enforcement officers acting to protect real or personal property. N.C.G.S. § 14–277.4

Specifically, Plaintiffs believe this statute is unconstitutionally vague and overbroad in violation of the First Amendment's protection of free speech. Furthermore, they believe this statute violates the First Amendment's guarantees of freedom of assembly and religion. Plaintiffs also believe the statute denies them their Fourteenth Amendment right to equal protection of the law because it discriminates between classes of protestors. They also complain that the statute unconstitutionally delegates authority to police officers in violation of the Fourteenth Amendment's due process right, and that its criminal contempt provision deprives them of their rights to trial by jury, indictment, due process and equal protection.

## ANALYSIS.

The Court believes this action is in such an early stage that it poses certain problems in addressing the respective motions. Specifically, the Court notes that no answer has been filed and that the Court has before it two essential legal questions. First, the Court must decide whether Plaintiffs have standing to bring this action. Second, the Court must decide whether Plaintiff's complaint states a claim. Yet, in this case, to decide the first question requires the Court to resolve the second question. That is, Plaintiffs cannot be said to have suffered a justiciable injury in fact unless they are credibly faced with prosecution under a statute that is somehow unconstitutional. This Court believes that because of the scant record before it, it is premature for it to decide the constitutionality of the statute in question and yet, to decide the other questions, there necessarily arises a need to decide the constitutionality issue.

Consequently, the Court will proceed to analyze the legal issues before it by only considering whether the complaint states a colorable constitutional infirmity in the statute, not whether the statute is now and forevermore unconstitutional.

### 1) The Rule 12(b)(6) Motions

Rule 12(b)(6) places the burden upon the party seeking dismissal to demonstrate the non-moving party has stated no facts in its complaint which entitle it to relief. In evaluating such a motion, the Court must assume all well plead facts are true and draw all

reasonable inferences from those facts in favor of the non-moving party. *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Consequently, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957).[1]

■ The Court finds Plaintiffs' complaint states, at the least, a colorable claim that § 14–277.4 is overbroad and vague. Having reached this conclusion, the Court does not believe it is necessary to consider the other maladies named in Plaintiffs' complaint since these findings alone are sufficient for the Court to evaluate the substantive aspects of this action and still move on to evaluate the more immediate concerns presented by the jurisdictional motions to dismiss and the request for injunctive remedies.

### a) Overbreadth

■ This statute prohibits persons from obstructing others exiting or entering a "health care facility" in a particular way. The statute provides that the prohibited "manner" of obstruction is that which "deprives or delays the person from obtaining or providing health care services in the facility." N.C.G.S. § 14–277.4(a). At first blush, this seems tolerable because the statute's reader *assumes* that blocking or obstructing can only occur by physical means. But the statute itself does not say this. Indeed, the statute focuses not on how the blockage or obstruction is conducted, but instead upon the effect which the blocker's or obstructor's actions have on the persons being blocked or obstructed. That is, this statute does not so much prohibit what the person facing criminal sanction does, as it makes criminal the effect of that persons' conduct on one seeking to enter or exit a health care facility. A person, as contemplated by this statute, can be both physically and psychologically obstructed, or delayed from entering a health

care facility. Consequently, the statute appears to go beyond the physical aspects of blocking or obstructing which come to mind in the common usages of those words and invades that murky area where protected speech is implicated.

■ Statutes cannot survive a facial attack to their overbreadth if they are "susceptible of application to speech, ... that is ... protected by the First and Fourteenth Amendments." *Lewis v. City of New Orleans*, 415 U.S. 130, 134, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974). With the scant record now before the Court, it is impossible to make legal conclusions with certitude. The Court's duty at this stage is to draw all reasonable inferences in Plaintiffs' favor. Having done this, the Court believes it is not inconceivable that facts could be proven to demonstrate this statute does substantially impinge upon protected conduct like speech. Consequently, the Court finds the complaint states a claim for a First Amendment overbreadth challenge sufficient to overcome a motion to dismiss.

### b) Vagueness

■ The Court also preliminarily finds this statute fails to include certain features, such as "fair notice or warning," sufficient to provide the definiteness necessary in a criminal statute. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). For example, the statute does not explicitly limit its prohibitions to physical blockage of health care facilities. Indeed, the statute strongly implies that its reach goes beyond mere physical obstruction contemplating other forms of obstruction in subsection (e) which provides, "This section shall not prohibit any person from engaging in lawful speech or picketing *which does not impede or deny another person's access to health care services ... or interfere with the delivery of health care services within a health care facility. Id.* §§ (e) (emphasis

---

1. The Court finds that the Charlotte–Mecklenburg Police Department is not a person within the meaning of 42 U.S.C. § 1983. Accordingly, the Court grants its motion to dismiss for failure to state a claim upon which relief can be grant-

ed. *Vinson v. Richmond Police Dept.*, 567 F.2d 263 (4th Cir.1977). References to the Defendants in the remainder of this order does not include the Charlotte–Mecklenburg Police Department.

added). Two observations may be made about this provision.

First, by explicitly protecting "speech or picketing which does not impede ... or interfere" with certain activities, the statute permits a strong negative inference that it contemplates speech which does impede or interfere with another's access and that it criminalizes that speech. When asked why this subsection was necessary if subsection (a) was so clear, counsel for the State replied that it was possible for a person to engage in speech "so obstreperous" that it would impede access to a health care facility. Webster's Dictionary defines "obstreperous" as an adjective which means "noisily resisting control or defying commands." The New Lexicon Webster's Dictionary of the English Language 693 (1989 ed.). Then, counsel added that she could not imagine this provision would apply to speech unless "someone really crosses the line." But, the question then becomes, who's line; the North Carolina Legislature's, her's, a group of police officer's or that of some other sage.

The Court knows of few protests or pickets that are subdued and known for their mannerliness. Yet, they enjoy the highest rank of protection afforded by the Constitution. Then the State's counsel's brief states that, by virtue of subsection (e), protests "are among those activities specifically permitted by the challenged statute...." The State's Brief p. 2. The Court can only guess how counsel knows this and if a non-arbitrary line can be drawn within the parameters of this law. It is well established that "[w]here a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." Id. at 573, 94 S.Ct. at 1247. If anything, the State's attorney's confusion over the matter demonstrates enough vagueness to overcome a motion to dismiss because it highlights "perhaps the most meaningful aspect of vagueness doctrine ... the requirement that a legislature establish minimal guidelines to govern law enforcement." Id. at 575, 94 S.Ct. at 1248.

Second, this subsection appears to prohibit activities outside health care facilities which "interfere" with the delivery of services within the facilities. The Court can see how a group of people standing outside an abortion clinic proclaiming that multiple murders are taking place within could disrupt the conduct of clinic affairs if only by causing the patients and clinic staff to pause and consider what they are doing. This would seemingly involve interference with the delivery of services, however slight. It also potentially involves constitutionally protected activity. Thus, whatever else this provision might be, it also seems, at this stage, sufficiently vague to overcome a motion to dismiss. Therefore, Defendants' motions to dismiss for failure to state a claim are denied.

### 2) The Jurisdictional Motions to Dismiss

■ All Defendants challenge Plaintiffs' standing to bring this action and thereby this Court's jurisdiction over the subject matter of it. The Constitution confers jurisdiction to federal courts only where a live case or controversy is presented between adverse parties to an action. U.S. Const. art. III § 2. An essential aspect of the "case or controversy" requirement is the doctrine of standing. *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). There are two types of standing; legal or constitutional and prudential. *Id.* The Court will consider each aspect of the standing requirement *seriatim*.

#### a) Legal Standing
Broadly speaking,

the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

To establish constitutional standing, a plaintiff must first show he has,

suffered and "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) "actual

or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* (citations omitted).

The Defendants claim Plaintiffs have failed to establish any actual or imminent injury in this case. The injury which Plaintiffs complain of is the deterrent effect on the free exercise of their First Amendment rights produced by fear of prosecution for violating § 14–277.4. Complaint ¶ 17H. Thus, the question before this Court is whether § 14–277.4, which the Court has already preliminarily concluded bears sufficient constitutional flaws to state a claim, poses a sufficiently imminent and real threat to Plaintiffs' rights to cause a cognizable injury in fact and thereby confer standing upon them to challenge the statute in court.

Plaintiffs must have a personal stake in the injuries they complain of. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The Plaintiffs claim they have a personal stake in this action because they are the persons who wish to freely protest abortion and educate others about their views, and are yet inhibited from doing so. Complaint ¶'s 10, 11. On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [it is] 'presum[ed] that general factual allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). Thus, the Court finds it is Plaintiffs' own constitutional rights that are at stake, not those of some third party.

Plaintiffs must also demonstrate a direct injury in fact to their constitutionally protected rights. The Supreme Court has recognized that "it is not necessary that [plaintiffs] first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). Instead, within the context of First Amendment challenges to the validity of a statute, the Supreme Court recognizes standing is found somewhere in between the realms of "[a]llegations of a subjective 'chill' ..." and actual arrest for the exercise of First Amendment rights. *Laird v. Tatum,* 408 U.S. 1, 13, 14, 92 S.Ct. 2318, 2325, 2326, 33 L.Ed.2d 154 (1972). The cloudy domain where one finds constitutional standing is referred to as the "threat of specific future harm ..." *Id.* at 14, 92 S.Ct. at 2326, which is sufficiently direct and "actual or imminent." *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136. The "genuine threat of enforcement" of a criminal statute which colorably invades First Amendment rights creates the objective chill of those rights that in turn gives plaintiffs standing to challenge its validity. *Steffel,* 415 U.S. at 475, 94 S.Ct. at 1223. Hypothetical or imaginary threats of prosecution, subjective fear of state backed sanctions, and feelings of inhibition are not enough to create constitutional standing.

### 1) An Actual Injury

To find an imminent threat of injury to First Amendment rights, a statute must be operative, not moribund. Courts have refused to find standing where a statute has rested in dormancy without any historical prosecutions. In *Doe v. Duling,* 782 F.2d 1202 (4th Cir.1986), the Fourth Circuit found standing was lacking where two plaintiffs who admittedly engaged in pre-marital sex challenged a Virginia fornication statute enacted in 1819. The *Duling* Court observed that no persons like the plaintiffs before it had been arrested for the type of conduct they wanted to engage in for at least ten years. That Court noted "[r]ecorded cases reveal that the application of the statutes to [non-prostitutional, heterosexual activities of two unmarried persons] is, at most, a matter of historical curiosity." *Id.* at 1206.

■ Thus, the *Duling* Court concluded that the threat posed to those plaintiffs was only theoretical, imaginary, and presented only a "subjective fear of prosecution" because the plaintiffs before it were faced with a moribund statute. *Id.* This case does not present the Court with a moribund statute. Here, the Plaintiffs are faced with a statute, like that in *Doe v. Bolton*,[2] so new that it has yet to be fully enforced, and one that is intended to replace the trespass statute as it was applied to abortion clinics. Yet, the newness of this statute is also what gives it vigor and potential potency. While the Court knows of no prosecutions under this statute, this is not because the State lacks the will to bring them. Instead, there are no prosecutions because of § 14-277.4's youth, not the credibility of the threat that the State will enforce it against all people who engage in the conduct encompassed by its prohibitions.[3] This statute is far from moribund; it is not even yet adolescent. Its youth counsels not that it will go unenforced, but instead that the reach of its proscriptions and the zeal of their enforcement remains unknown. The Court finds Plaintiffs are faced with a statute that is alive and well, and backed by a State poised to fully enforce it and a known constituency very eager to have it enforced. It is no comfort to Plaintiffs, and of no benefit to Defendants, to claim the statute will not be enforced to infringe upon protected speech since "a genuine threat of enforcement of a *disputed* state criminal statute ..." is adequate to create standing. *Steffel*, 415 U.S. at 475, 94 S.Ct. at 1223 (emphasis added).[4]

■ The threat of prosecution is only imminent if an operative statute exposes a plaintiff to criminal liability if he acts upon a present intent to exercise his rights. *Steffel*, 415 U.S. at 459, 94 S.Ct. at 1215. The Police Chief claims Plaintiffs' failure to specify a time certain in the future when they will exercise their constitutional rights amounts to the sort of " 'some day' intentions" which do not create the requisite imminence of threatened injury. But this argument misses the point of *Lujan* and particularly misconceives the nature of standing in the context of First Amendment cases. In *Lujan*, the Court was presented with plaintiffs "dedicated to wildlife conservation" who sought to challenge the inadequacy of government protections for certain endangered animal species. *Lujan*, —— U.S. at ——, 112 S.Ct. at 2135. In that case, the Court noted the plaintiffs had a cognizable interest ("the desire to observe an animal species") *Id.* —— U.S. at ——, 112 S.Ct. at 2137, but that their

---

2. "Georgia's statute, in contrast, is recent and not moribund. Furthermore, it is the successor to another Georgia abortion statute under which, we are told, physicians were prosecuted." *Doe v. Bolton*, 410 U.S. 179, 188, 189, 93 S.Ct. 739, 745, 746, 35 L.Ed.2d 201 (1973).

3. N.C.G.S. § 14-277.4 was enacted on October 1, 1993, just over two months prior to the filing of Plaintiff's complaint. Plaintiffs' Exhibit B, ¶ 1, p. 1.

4. The State concedes the conduct which Plaintiffs intend to engage in is constitutionally protected, but argues § 14.277.4(e) specifically excludes that conduct from its terms. But as previously noted, the State is not really sure what that provision means and the Court believes it can conceivably reach protected conduct. Yet, the State is confident Plaintiffs have no credible fear of prosecution. The State contends the fact that no persons engaging in protected conduct have yet to be prosecuted demonstrates they will not be prosecuted. Surely this is a nonsequitur and one which the Court is sure is of no solace to Plaintiffs. "Well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law." *Baggett v. Bullitt*, 377 U.S. 360, 373, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964).

Furthermore, despite the assurances that the Charlotte–Mecklenburg County Police do not now believe § 14-277.4 can be used to prosecute First Amendment sheltered speech, it remains to be seen what other less magnanimous police departments under different legal guidance will do with this statute to persons other than these Plaintiffs. "[W]here the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and ' "with no requirement that the person making the attack demonstrate that his own conduct could be regulated by a statute drawn with the requisite narrow specificity." ' " "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 957 and 958, 104 S.Ct. 2839, 2847 and 2848, 81 L.Ed.2d 786 (1984).

protected interest had not been directly affected by the regulation because they were in no way specifically connected to animals who were half a globe away. The Court concluded the plaintiffs had suffered an insufficiently direct injury because they only hoped to someday see the endangered animals which they were otherwise wholly unconnected to. *Id.* ⸺ U.S. at ⸺, 112 S.Ct. at 2138–2140.

In this case, "Plaintiffs have conveyed, and wish to continue to convey" their views through protected speech. Complaint at ¶ 11. Plaintiffs would presumably be presently protesting legalized abortion, and presumably would have protested yesterday, but for the existence of § 14–277.4, the State's credible intent to enforce it, and the risk that it poses to protected speech. One essential aspect of the right to speak freely is the right to do so at a reasonable time of one's own choosing. The fact that Plaintiffs cannot mark a date certain on their calendar when they wish to protest does not mean their rights have not been directly and impermissibly inhibited. Thus, if anything, Plaintiffs' injury is not someday, but today, if their injury is understood as the restraint or chill on the exercise of their rights affected by § 14–277.4. The actual chill worked upon freely voiced dissent is the direct injury in this case. The Police Chief's view of immediacy has no relevance to this action since only "[w]here there is no actual harm, [must] imminence . . . be established. *Lujan*, ⸺ U.S. ⸺, ⸺, ft. nt. 2, 112 S.Ct. 2130, 2139, ft. nt. 2, 119 L.Ed.2d 351. Here, there is actual, not imminent, harm presented by a credible threat of prosecution under a proscriptive statute which may very well be enforced.

To establish a direct injury, there must be a "genuine threat of enforcement." *Steffel*, 415 U.S. at 475, 94 S.Ct. at 1223. In *Steffel*, the Supreme Court was faced with a Plaintiff who had been warned not to handbill and who "although he desired to return to the shopping center to distribute handbills, . . . had not done so because of his concern that he . . . would be arrested for violation [of the law]. . . ." *Steffel*, 415 U.S.

at 456, 94 S.Ct. at 1214. There the Court found the Plaintiff before it had not raised a "chimerical" concern of arrest but instead one that was real. This Court is presented with Plaintiffs who, unlike Mr. Steffel, have reason to believe they will be given no warnings at all if they engage in what they believe is protected conduct. Their first warning is their last. Charlotte–Mecklenburg Deputy Police Chief Laney has issued directives to enforce the statute and has told officers the three warnings which preceded an arrest under the trespass statutes are ·no longer necessary under § 14–277.4. Plaintiffs' Exhibit B p. 2. In short, the Court has every reason to believe the State will enforce this statute to its fullest extent, without warning.[5]

Prosecution under the instant statute is not hypothetical, but real. All that remains is the conduct of some citizen whom the State contends is in violation of § 14–277.4. Plaintiffs' injury is only made distant, if at all, by the Plaintiff's objective fear of the actual threat and their forbearance from protesting. Surely if a plaintiff who has received previous warnings has standing, then these Plaintiffs are not barred from challenging a statute's constitutionality because the State has assured them they will receive no warning at all when the statute is violated. *Steffel* acknowledges that Plaintiffs do not have to be arrested before they have standing and the fact that they will not be warned indicates that the injury is all the more immediate and real. Moreover, as previously noted, it is of no aid to Defendants to assure Plaintiffs that the statute will not be used to infringe upon protected rights because "a genuine threat of enforcement of a disputed state criminal statute" is enough to confer standing. *Steffel*, 415 U.S. at 475, 94 S.Ct. at 1223. There is a genuine threat of enforcement of § 14–277.4 against Plaintiffs.

The Court also finds the threatened injury to Plaintiffs is direct. Plaintiffs' complaint makes clear they would be conducting the First Amendment protected activity today, as they have in the past, but for § 14–277.4. The fact that they have yet to be prosecuted,

---

**5.** Since the Court has preliminarily concluded that § 14–277.4 is broad and vague enough to encompass First Amendment protected activity,

it follows that enforcement of the statute would, if taken to its fullest extent, also sweep far enough to reach that protected conduct.

or even threatened with prosecution, is of no consequence since they, "have standing despite the fact that the record does not disclose that any one of them has been prosecuted or threatened with prosecution, for violation of the States' . . . statute." *Doe,* 410 U.S. at 183, 93 S.Ct. at 743. In *Doe,* the Supreme Court was faced with physicians who wished to perform abortions—a right which they believed was protected by the Constitution—but were inhibited from doing so by a statute which criminalized abortion. The Court believes the Plaintiffs in the present action are in a position identical to that of the abortionists in *Doe.* The Supreme Court noted the doctors in *Doe* were,

> the one[s] against whom these criminal statutes directly operate in the event [t]he[y] procure[ ] an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. *Id.* at 188, 93 S.Ct. at 745.

Like the plaintiffs in the long line of cases that recognize the Constitution is violated when First Amendment rights are chilled,[6] the Plaintiffs before the Court are not laboring under the subjective chill of their free speech rights. Plaintiffs have more that just "knowledge that a governmental agency . . . might in the future take some . . . action detrimental to [them]." *Laird,* 408 U.S. at 11, 92 S.Ct. at 2324. They are instead persons challenging proscriptive governmental power which they are "proscriptively subject to . . . ." *Id.* Therefore, the Court holds that Plaintiffs are faced with a credible threat of prosecution sufficiently direct to provide them with a cognizable injury in fact. Their First Amendment rights are objectively chilled by the real possibility of a criminal prosecution for protesting legalized abortion in North Carolina.

### 2) Causation and Redressibility

██ The Court also concludes that the threat of prosecution is causally related to Plaintiffs harm and that this harm is redressable by the Court. The Plaintiffs would plainly be the object of prosecution were they to run afoul of the already noted ambiguity and overbreadth of § 14.277.4. It is well-settled that where the plaintiff is himself the object of the contested action "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan,* — U.S. at —, 112 S.Ct. at 2137. Therefore, the Court concludes the Plaintiffs have legal standing to challenge the constitutionality of N.C.G.S. § 14–277.4.

### b) Prudential Standing

██ "Apart from th[e] minimum constitutional mandate, [there are] other limits on the class of persons who may invoke the courts' decisional and remedial powers." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. The Supreme Court has said federal courts ought not insert themselves into otherwise justiciable controversies when "the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens . . . ." *Id.* This is not the sort of controversy presented to this Court in this case. If anything, the Plaintiffs before the Court are a dissident minority of citizens who have grievances different in substance and intensity from those of a substantial majority of their fellow citizens. The Supreme Court has also recognized that federal courts ought to avoid deciding controversies posed by plaintiffs seeking to assert "the rights or interests of third parties." *Id.* As previously mentioned, the Plaintiffs in this action are asserting their own rights to free speech. Therefore, the Court denies Defendants' motions to dismiss for lack of subject matter jurisdiction.

### c) Abstention

All Defendants invoke *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27

---

6. *See, Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675,

17 L.Ed.2d 629 (1967); *Lamont v. Postmaster General,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

L.Ed.2d 669 (1970), to urge this Court to abstain from exercising its jurisdiction over this action. *Pullman* holds that a federal court presented with unclear state law should abstain from exercising jurisdiction until a state court has been given an opportunity to clarify the law and thereby remove the need for determining a constitutional dispute. *Younger* holds that even federal courts presented with justiciable controversies are forbidden "to stay or enjoin pending state court proceedings except under special circumstances." *Id.*, at 41, 91 S.Ct. at 749. Thus, *Pullman* applies to the discretionary exercise of jurisdiction itself by a federal court and *Younger* is directed at the authority of federal courts to dispense particular sorts of remedies. Yet, it has been said that "abdication or postponement of federal court jurisdiction to accommodate state court adjudication ... 'is the exception, not the rule.' " *Cox v. Planning District I Community Health Board*, 669 F.2d 940, 942 (4th Cir.1982), *quoting, Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■ The Court will discuss the dimensions of *Younger* abstention *infra* in its treatment of Plaintiffs' application for injunctive relief. For present purposes, the Court notes that the Supreme Court held unanimously in *Steffel* that,

> regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied. *Steffel*, 415 U.S. at 475, 94 S.Ct. at 1223.

The rationale for *Steffel* was two-fold. First, the Court recognized that,

a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding. *Id.* at 462, 94 S.Ct. at 1217.

Second, the Court observed that "Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Id.* at 472, 94 S.Ct. at 1222. Clearly, this Court is not precluded by *Younger* from exercising the jurisdiction conferred by the Declaratory Judgment Act because there is no pending state prosecution of the plaintiffs before it and they are seeking declaratory relief as well as injunctive remedies.[7]

■ Turning to Defendants' requests that this Court exercise *Pullman* abstention, it is worth noting that "[t]he abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett*, 377 U.S. at 375, 84 S.Ct. at 1324. The Court is also mindful that "abstention cases have dealt with unresolved questions of state law which *only a state tribunal could authoritatively construe.*" *Wisconsin v. Constantineau*, 400 U.S. 433, 438, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (emphasis added). The State, curiously, believes this Court should abstain because it is confident, "that the North Carolina appellate courts will adopt a constitutionally appropriate interpretation of the statute." State's Brief p. 8. If this statute is so obviously reconcilable with the Constitution, then why not have this Court declare it so now? Alternatively, if § 14–277.4 obviously offends the Constitution, there is no sensible reason to await a

---

**7.** Counsel for the Police Chief believes Plaintiffs have impaled themselves upon the horns of a considerable dilemma. At oral argument, he pointed out that either Plaintiffs are not immediately threatened with prosecution—in which case they have no standing—or they are immediately threatened with prosecution in which case *Younger* mandates that this Court entirely abstain. But this argument's second premise is invalid

because *Younger* does not mandate abstention when prosecution is imminently threatened. Instead, it holds, within the context of "pending state court proceedings ..." that "the possible unconstitutionality of a statute ... does not in itself justify an *injunction* ..." *Id.* 401 U.S. at 41 and 54, 91 S.Ct. at 749 and 755. *Younger* only requires federal courts abstain from enjoining pending state prosecutions.

state court ruling to that effect when this Court can, and by virtue of the 14th Amendment must, declare it so quickly and remove any obstacle to the freedom of speech. If the constitutionality of the statute is a close call, then this Court (like all other courts) has the duty to make that call. To do so now no more offends federalism than the Fourteenth Amendment.[8] Indeed, this case is more like that presented to the Court in *Wisconsin v. Constantineau* where it observed, "the naked question, uncomplicated by an unresolved state law, is whether [the] Act on its face is unconstitutional." *Id.,* at 439, 91 S.Ct. at 511. In such a case, "abstention should not be ordered merely to await an attempt to vindicate the claim in a state court." *Id.*

The Court believes that if it were to abstain in this case, it would place the Plaintiffs, or others like them, in the untenable position of enduring "extensive adjudications, under the impact of a variety of factual situations, [which] would bring the [statute] within the bounds of permissible constitutional certainty." *Id.* 377 U.S. at 378, 84 S.Ct. at 1326. In such a posture, "abstention [would] operate to require piecemeal adjudications in many courts, thereby delaying the ultimate adjudication on the merits for an undue length of time." *Id.* This is particularly intolerable where the piecemeal litigation would likely occur within the context of the criminal prosecution of these Plaintiffs and others without any clarification of the constitutional dimensions of this statute.

Furthermore, *Pullman* does not mandate abstention, even where state law is unclear, if constitutional rights are at stake. Indeed, "[w]hen federal claims are premised on 42 U.S.C. § 1983 ...—as they are here—we have not required exhaustion of state judicial ... remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Steffel,* 415 U.S. at 472, 473, 94 S.Ct. at 1222. Where, as here, the ambiguity of state law itself gives rise to injuries of constitutional proportion, the best course of action is not to abstain, but to rule so as to either protect those rights, or alleviate any concern about their infringement by state law. Accordingly, Defendants' motions to abstain are denied.

### 3) The Motion for Injunctive Relief

■ Plaintiffs' requests for injunctive and declaratory relief do not present "a single issue." *Steffel,* 415 U.S. at 463, 94 S.Ct. at 1217.

Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable is amply evidenced by the legislative history of the Act...." *Id.* at 466, 94 S.Ct. at 1219.

The Court believes this case, much like *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) which reaffirmed the propriety of deciding declaratory relief apart

8. Defendants believe this Court's opinion in *Floyd v. Thornburg,* 619 F.Supp. 756 (W.D.N.C. 1985) compels abstention in this case. *Floyd* is readily distinguishable from the present case and indeed weakens Defendants' abstention arguments. In *Floyd,* this Court was presented with a complaint advancing a positively ludicrous argument that North Carolina's anti-obscenity law transgressed the First Amendment because it " 'criminalize[d] ... "oral intercourse" which is speech itself since both words together only relate to verbal discourse....' " and its prohibition of materials depicting sadomasochism and self-flagellation criminalized pictures of people in bizarre costumes. *Id.* at 759. Faced with such a laughable argument, and little or no danger to the First Amendment, this Court decided on federalism grounds that the courts ought not "look over the [states'] shoulder with a view to revising to the Court's satisfaction every Act passed"

when the Constitution is not even remotely implicated. *Id.,* at 760. This Court reaffirms its constitutional obligation under the Federal Constitution to respect the rights of the states which do not depend on the courtesies of the federal government. "[O]ur constitutional system [does not establish] courts [as] roving commissions assigned to pass judgment on the nation's laws." *Id.,* at 761. But the most important feature of our constitutional system is that it involves a supreme law—the Constitution. When the Constitution *adopted by the states* is seriously implicated, as the Court believes it is in this case, federalism is not at stake; whereas the Constitution is. The Court believes the issues presented to it in this case implicate the federalism concerns that motivated its decision in *Floyd* about as much as oral copulation implicates the First Amendment.

from the issuance of an injunction, is just such a case where declaratory relief is more fitting than injunctive remedies. This conclusion is supported by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 which held "that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it...." *Id.* at 54, 91 S.Ct. at 755. *Younger* was decided largely upon federalism grounds. Mr. Justice Black, speaking for the *Younger* Court, explained the rationale for this holding by noting that, in a passage worthy of quoting at length,

> the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate function in their separate ways. The concept does not mean blind deference to "States' Rights" any more that it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early days of our Union of States, occupies a highly important place in our Nation's history and its future. *Id.* at 44, 45, 91 S.Ct. at 750–51.

It is this high view of federalism that motivates this Court's decision to decline Plaintiffs request for injunctive relief.

■ Declaratory relief is more fitting in this case because it involves the most minimal intrusion possible into the State of North Carolina's constitutionally recognized province of enforcing its criminal law. *Id.* 415 U.S. at 469, 94 S.Ct. at 1220. The Court's preference for declaratory relief has nothing to do, either way, with its forecast of who will prevail on the merits of this action. Instead, the Court believes injunctive remedies are not *necessary* to adequately protect the rights of the Plaintiffs now before it because "even irreparable injury is insufficient unless it is 'both great and immediate.'" *Id.* 401 U.S. at 46, 91 S.Ct. at 751. Such strong medicine as a broad injunction goes too far given the present posture of this action. One essential feature of our constitutional structure—federalism—demands that, "[f]ederal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if the statutes are unconstitutional." *Id.* at 46, 91 S.Ct. at 751. Thus, Plaintiffs' requests for a temporary restraining order and a preliminary injunction will be denied.

### SUMMARY

To summarize, the Court denies Defendants' motions to dismiss for failure to state a claim, for lack of subject matter, and to abstain. The Court also denies Plaintiffs' application for a temporary restraining order or preliminary injunction. The Court directs Defendants to file their answers, as required by Rule 12(a), "within 10 days after notice of the court's action...." Fed.R.Civ.P. 12(a).

**NOW, THEREFORE, IT IS ORDERED** that Defendants' (James B. Hunt, the State of North Carolina, and the Police Chief) motions to dismiss for failure to state a claim upon which relief can be granted be, and hereby are, **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Charlotte–Mecklenburg Police Department's motion to dismiss for failure to state a claim upon which relief can be granted be, and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss for lack of subject matter jurisdiction be, and hereby are, **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' motions for this Court's abstention be, and hereby are, **DENIED.**

IT IS FURTHER ORDERED that Plaintiffs' applications for a temporary restraining order and a preliminary injunction be, and hereby are, DENIED.

IT IS FURTHER ORDERED that Defendants file their answers as required by Federal Rule of Civil Procedure 12(a).

### JUDGMENT

THIS MATTER is before the Court on Defendant's (Charlotte–Mecklenburg Police Department) motion to dismiss, filed January 3, 1994.

NOW THEREFORE, in accordance with the Memorandum of Decision and Order filed simultaneously with this Judgment, IT IS ORDERED, ADJUDGED, AND DE-CREED:

1) That this action be, and hereby is, DISMISSED with prejudice as to the Charlotte–Mecklenburg Police Department only.

2) That Plaintiff shall recover nothing from Defendant.

3) That each party shall bear its own costs.