782 F.2d 1202
 54 USLW 2455
 James DOE and Jane Doe, Appellees,
v.
Frank S. DULING, Chief of the Richmond Bureau of Police, and
Aubrey M. Davis, Jr., Commonwealth's Attorney for
the City of Richmond, Appellants.
The Assembly of God--Potomac District Council, et al., Amicus Curiae.
 No. 85-1326.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 10, 1985.
Decided Feb. 7, 1986.
 
 Michael L. Sarahan, Asst. City Atty., and Mark R. Davis, Asst. Atty. Gen., Richmond, Va., (Gerald L. Baliles, Atty. Gen. of Va., William G. Broaddus, Atty. Gen. of Va., Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., on brief) for appellants.
 Michael Morchower (Morchower, Luxton & Whaley, Richmond, Va., on brief), for appellees.
 (Christopher A. Meyer, Susan G. Oliver, H. Elizabeth Shaffer, Dr. Gary Leedes, Richmond, Va., on brief) for amici curiae.
 Before SPROUSE and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 Plaintiffs brought suit under the pseudonyms Jane Doe and James Doe challenging the constitutionality of Virginia statutes prohibiting fornication and cohabitation. Va.Code Secs. 18.2-344, 18.2-345 (1982). The district court granted both injunctive and declaratory relief on the grounds that these statutes violated plaintiffs' rights to privacy. Doe v. Duling, 603 F.Supp. 960 (E.D.Va.1985). Plaintiffs, however, failed to show even a remote chance that they are threatened with prosecution under these provisions. To adjudge this fanciful dispute would undermine the proper role of federal courts in our system of government and usurp the position of state courts and legislatures as primary arbiters of state law. We therefore vacate the judgment of the court below and remand with directions to dismiss for want of a justiciable case or controversy. We express no view on the merits of the constitutional questions addressed by the district court.
 
 I.
 
 2
 Plaintiffs (appellees in this action) are unmarried adults who maintain separate residences in the City of Richmond. In depositions, affidavits, and stipulations of fact, they state that they have engaged in sexual intercourse in the city with unmarried members of the opposite sex. Jane Doe further alleges that she has engaged in unlawful cohabitation. The Does believe that fornication and cohabitation are "common forms of conduct in society generally and in the City of Richmond in particular" and that an arrest for such activity could cause them "considerable personal embarrassment" and affect professional standing. Though neither has ever been arrested or threatened with arrest for violation of these statutes, the Does maintain that each has abstained from sexual intercourse and cohabitation since they learned of the laws in question for fear of prosecution. Finally, each expresses a desire to engage in private, consensual heterosexual activity free from government intrusion.
 
 
 3
 Virginia has prohibited fornication since at least 1819. See 1 Revised Code, Ch. 142, Sec. 5 (1819). The current code provides that "[a]ny person, not being married, who voluntarily shall have sexual intercourse with any other person shall be guilty of fornication," Va.Code Sec. 18.2-344 (1982). The last reported conviction for fornication in Virginia was in 1849. See Commonwealth v. Lafferty, 47 Va. 874 (6 Gratt.) (1849).
 
 
 4
 Cohabitation is prohibited under Sec. 18.2-345 of the current code: "If any persons, not married to each other, lewdly and lasciviously associate and cohabit together, or whether married or not, be guilty of open and gross lewdness and lasciviousness, each of them shall be guilty of a ... misdemeanor." This section contains two distinct prohibitions, the second of which involves open and conspicuous lewd behavior. See Everett v. Commonwealth, 214 Va. 325, 200 S.E.2d 564 (1973). The cohabitation offense presumably requires no such openness. Virginia has maintained its statutory prohibition on cohabitation for well over 100 years. See Va.Code, Tit. 54, Ch. 196, Sec. 7 (1860). The last recorded conviction for private, consensual cohabitation occurred in 1883. See Scott v. Commonwealth, 77 Va. 344 (1883).
 
 
 5
 The Does introduced depositions of police officers and arrest records that purportedly reveal a pattern of current enforcement on which their fears of prosecution are grounded. Four current or former members of the Richmond vice division testified in general terms that all laws are enforced and specifically stated that they would investigate complaints of fornication and cohabitation if time and personnel limitations allowed. None of the officers, however, recalled any arrests for fornication in a private, consensual setting except for those involving prostitution. Lieutenant John Carlson, for example, was head of the vice division during the depositions and testified that all fornication arrests he recalled in the last five years were prostitution-related. Officer William C. Bailey, involved in more than thirty fornication arrests, stated that nearly all were prostitution-related and none involved activity in a private home. None of the officers recalled a cohabitation arrest since 1976. Carlson stated his belief that cohabitation had to involve open sexual conduct before it fell within the prohibitions of the statute.
 
 
 6
 The arrest records entered into evidence bear this testimony out. The parties stipulated that none of these arrests involved fornication in a private residence. To the extent the record discloses the circumstances of these arrests, it shows that all involved public conduct. Two arrests, for example, were of individuals in a car; three arrests occurred in a public park.[1]
 
 
 7
 The district court first considered the question of justiciability. The court found that the Does had standing because the challenged statutes apply expressly to them. Doe v. Duling, 603 F.Supp. at 964. Recognizing that there must be "a threat of prosecution sufficient to make this controversy ripe for review," id., the court held that the general policy of enforcing criminal laws, coupled with recent enforcement of the challenged statutes, established a credible threat, making the case ripe for review. On the merits, the court found that "the constitutional right to privacy extends to a single adult's decision whether to engage in sexual intercourse." Id. at 967. Finding no compelling state interest, it struck down the fornication statute and that portion of Sec. 18.2-345 prohibiting cohabitation. It found the prohibition in Sec. 18.2-345 of "open and gross lewdness and lasciviousness" within the state's proper sphere of regulation.
 
 II.
 
 8
 Federal courts are principally deciders of disputes, not oracular authorities. We address particular "cases" or "controversies," U.S. Const., Art. III, Sec. 2, and may not arbitrate abstract differences of opinion. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The case or controversy requirement maintains proper separation of powers between courts and legislatures, provides courts with arguments sharpened by the adversarial process, and narrows the scope of judicial scrutiny to specific facts. Where state criminal statutes are challenged, the requirement protects federalism by allowing the states to control the application of their own criminal laws.
 
 
 9
 The Supreme Court has made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution under the statute to present a case or controversy. Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298-99, 99 S.Ct. 2301, 2308-09, 60 L.Ed.2d 895 (1979); Wooley v. Maynard, 430 U.S. 705, 711-12, 97 S.Ct. 1428, 1433-34, 51 L.Ed.2d 752 (1977); Ellis v. Dyson, 421 U.S. 426, 433, 95 S.Ct. 1691, 1695, 44 L.Ed.2d 274 (1975); Steffel v. Thompson, 415 U.S. 452, 458-60, 94 S.Ct. 1209, 1215-16, 39 L.Ed.2d 505 (1974); Younger v. Harris, 401 U.S. 37, 41-42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).[2] The threat must be "credible," Babbitt, 442 U.S. at 298, 99 S.Ct. at 2308, and "alive at each stage of the litigation." Ellis, 421 U.S. at 435, 95 S.Ct. at 1696. The Court has noted, however, that "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." Younger, 401 U.S. at 42, 91 S.Ct. at 749. A litigant must show more than the fact that state officials stand ready to perform their general duty to enforce laws, Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961); Watson v. Buck, 313 U.S. 387, 399, 61 S.Ct. 962, 966, 85 L.Ed. 1416 (1941). Even past threats of prosecution may not be sufficient to establish a controversy susceptible of resolution in federal court. See, e.g., Ellis, 421 U.S. 426, 95 S.Ct. 1691. In short, one must show a threat of prosecution that is both real and immediate, Golden v. Zwickler, 394 U.S. 103, 109-10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), before a federal court may examine the validity of a criminal statute.
 
 
 10
 The record in this case establishes that the Does face only the most theoretical threat of prosecution. As noted by the district court, plaintiffs seek to determine "whether the State, consistent with the Constitution, may restrict the non-prostitutional, heterosexual activities of two unmarried, consenting adults when such activities occur in the privacy of one's home." Doe v. Duling, 603 F.Supp. at 966. Recorded cases reveal that the application of the statutes to such activity is, at most, a matter of historical curiosity. Attempts to update that history by showing recent arrest records were equally unavailing, for not one arrest has been shown to involve the behavior at issue in this case. Arrests for fornication and cohabitation arose instead from prostitutional or non-private behavior, not at issue here. The parties in fact stipulated that no arrests in evidence related to activity in a private residence, though the Does recognize that this conduct is common in society. The total absence of prosecutions in this context establishes that appellees have "no fears of prosecution except those that are imaginary or speculative." Younger, 401 U.S. at 42, 91 S.Ct. at 749. See also, Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752.
 
 
 11
 The Does maintain, however, that they are fearful of cohabiting or engaging in sexual intercourse since they have learned of the statutes in question. Such subjective fear of prosecution does not establish an objective threat. See Younger, 401 U.S. at 51-53, 91 S.Ct. at 754-55. There are, of course, occasions when the chilling effect of a statute is so powerful and the rights it inhibits so important that the mere existence of the statute may warrant judicial intervention. See, e.g., Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). These cases, however, must be rare, for otherwise the case or controversy requirement would be set at naught. Every criminal law, by its very existence, may have some chilling effect on personal behavior. That was the reason for its passage. A subjective chill, however, is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972), save in rare cases involving core First Amendment rights. See Broadrick v. Oklahoma, 413 U.S. 601, 611-16 (1972). Even in the area of First Amendment disputes, the Supreme Court has generally required a credible threat of prosecution before a federal court may review a state statute. See, e.g., Steffel, 415 U.S. at 458-59, 94 S.Ct. at 1215. In Steffel, for example, petitioner did more than allege an academic chill. He twice openly engaged in the prohibited handbilling and was twice threatened by the authorities with arrest. Here, by contrast, there is simply no basis for concluding that the Does are threatened by the existence or operation of these laws.
 
 
 12
 The Does would have us overlook this deficiency and opine in the abstract on the validity of state enactments. Their argument is essentially that the mischief in these antique statutes justifies whatever arrogation of authority is needed to invalidate them. Authority, however, achieves acceptance through scrupulous exercise. The Constitution delegates to the legislative and executive branches, not to federal courts, the establishment of broad social agendas and the expression of ideals of public morality. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982); Warth v. Seldin, 422 U.S. 490, 499-500, 95 S.Ct. 2197, 2205-06, 45 L.Ed.2d 343 (1975). Absent threatened injury, such as prosecution, review of criminal laws is, in effect, an appropriation of power by the federal judiciary. See United Public Workers v. Mitchell, 330 U.S. 75, 86-91, 67 S.Ct. 556, 562-65, 91 L.Ed. 754 (1947). Such an exercise would leave "the federal courts as virtually continuing monitors of the wisdom and soundness of Executive [and Legislative] action." Laird, 408 U.S. at 15, 92 S.Ct. at 2326. Federal judges would come to operate as second vetoes, through whom laws must pass for approval before they could be enforced. Article III, however, schools federal judges in patience; we must await specific disputes arising from the actions of those primarily responsible for social policy. Otherwise, we discard our robes for legislative hats without the electoral accountability that legitimizes the legislative product or executive enforcement.
 
 
 13
 There is no better example of the need for judicial circumspection than the instant case. In the absence of a threat of prosecution, this action represents no more than an abstract debate, albeit a volatile one. Here, two plaintiffs disagree with a state statute and desire a federal court to declare it unconstitutional. Their views undoubtedly deserve consideration. The proper forum for their presentation is not, however, a federal court. The briefs before this court present instead the clash of argument in the abstract that would be better suited to a campaign for public office or a legislative hearing.
 
 
 14
 We are not concerned that this unenforced statute may escape the attention of the political process. Nor are we persuaded by the argument that if quaint statutes are never enforced, then defendants' constitutional rights will never be tested, and the Does lack any meaningful remedy. The absence of a "remedy" works no injustice on those who have never suffered so much as the threat of an injury. Furthermore, statutes whose status may be largely symbolic are appropriate subjects for political debate.
 
 
 15
 The instant case well illustrates this point. To many, the Virginia statutes here compromise the sacred component of privacy in sexual expression. They represent the potential intrusion of the state into the sanctity of the home or apartment, the potential for police action on nothing more than pretext and suspicion, and the imposition of antiquated attitudes about sex that bear little relevance to the diversity of individual lifestyles in a contemporary world. To others, these statutes express the value society places upon the life of the family and the institution of marriage, upon the realization of love through the encouragement of sexual fidelity, and upon the prevention of sexually transmitted diseases brought on by promiscuity. They discern in old laws renewed relevance as traditional values come under siege.
 
 
 16
 Each view has its adherents, and the pendulum of social conscience will doubtless swing between the two indefinitely. It is, however, for state legislatures, not federal courts, to face that political choice. States still bear primary responsibility in our system for the protection of public health, welfare, safety, and morals. See, Paris Adult Theatre I v. Slaton, 413 U.S. 49, 57-69, 93 S.Ct. 2628, 2635-41, 37 L.Ed.2d 446 (1973). Many states, moreover, have modified statutes similar to those at issue here. See, e.g., 169 Conn.Acts, P.A. No. 828, Sec. 214 (repealing prohibition on fornication, Conn.Gen.Stat. Sec. 53-219); 1983 Wis.Laws, Act 17, Sec. 4; Act 27, Sec. 1790(e), codified at Wis.Stat. Sec. 944.15 (Supp.1985) (modifying prohibition on fornication to include only public acts and acts with persons aged 16-18). To undertake our own updating would preempt the role of elective politics in the revision of public morality. It may well be that the Virginia legislature will not repeal these statutes tomorrow or the day thereafter. We cannot, however, take for our mandate the fact that democratic reform, like the proverbial mule, is often stubborn and slow.
 
 
 17
 Where, as here, a federal court is asked to review state criminal statutes, doctrines of federalism and comity reinforce the threat of prosecution requirement. Since at least Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926) there has been no question that the usual place to test the validity of state criminal laws is in a state prosecution. See also, Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). The Supreme Court has reaffirmed the significance of the states' role in a series of cases beginning with Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The uniform message of these cases is that federal courts may intervene in the state criminal process only in rare and narrowly specified circumstances. In Younger and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the court ensured proper respect for state criminal law by barring federal equitable relief against pending state prosecutions save in extraordinary situations. Restraint of ongoing state prosecutions "would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with federal courts," to guard constitutional rights and liberties. Steffel, 415 U.S. at 460, 94 S.Ct. at 1216.
 
 
 18
 Even in the absence of pending state prosecutions, the states retain significant interests over the administration of their own criminal laws free from federal interference. Without at least the threat of prosecution, there is little factual development before the federal court, and attacks on state laws take the form of sweeping claims of facial invalidity. Awaiting a threat of enforcement, by contrast, allows concrete application of state laws to specific instances of human behavior. Cf. Boyle v. Landry, 401 U.S. 77, 81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971). Awaiting state enforcement also provides an opportunity for limiting constructions of state law by state courts by which constitutional issues may be avoided.[3] The executive branch of state government may also place a narrowing "construction" on a questionable law by confining enforcement to cases clearly within the proper bounds of state regulation. Such restrictive constructions by the state avoid needless and premature friction among state and federal entities and do not leave a federal court to speculate over the scope and effective reach of the state law before it. See O'Shea v. Littleton, 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).
 
 
 19
 Here, for example, the state laws in question might be applied in any number of ways--to prostitution, to incest, to fornication in a public place, to multiple party sexual activity, or to private, consensual conduct. The laws might be applied to sexual activity for procreative purposes, a matter on which plaintiffs' intentions are not in evidence. Cf. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Some of these applications are doubtless constitutional; others may not be. By awaiting a concrete case or controversy, we decline to indulge the presumption that state authorities will pursue a constitutionally suspect course.
 
 
 20
 Our resolution of this matter does not mean that federal review of these statutes is to be forever foreclosed. Should individual rights be implicated by actual or threatened enforcement of the statutes, the federal courts may assume an appropriate reviewing role under Article III. Federal courts may, for example, consider the validity of these statutes if the state undertakes bad faith enforcement of them, or if other extraordinary circumstances demonstrate irreparable injury. Younger, 401 U.S. at 54, 91 S.Ct. at 755; See also Kugler v. Helfant, 421 U.S. 117, 124-25 and n. 4, 95 S.Ct. 1524, 1530-31 and n. 4, 44 L.Ed.2d 15 (1975). Even after state prosecution, of course, federal courts may have the opportunity to review these statutes on direct Supreme Court review or in collateral proceedings. Each of these is more consonant with the structure of government established by the Constitution and set forth by the Supreme Court than the abstract gesture we are asked to make here.
 
 
 21
 Without a case or controversy, we are essentially invited to make a symbolic pronouncement endorsing one of many possible visions of social governance and sexual morality. This responsibility, however, has been delegated to others in our system of government. Federal courts, of course, stand ready to protect individual rights whenever such rights are tangibly threatened by the operation of suspect laws. But the timing of our role is crucial; the prospect that our word may sometimes be the final one suggests it need not always be the first.
 
 III.
 
 22
 For the reasons herein stated, the decision of the district court is hereby vacated, and this action is remanded with directions to dismiss for want of a case or controversy.
 
 
 
 [1]
 The arrest records involved fornication, rather than cohabitation. Only three actual fornication arrest records are in evidence. Seven additional arrests for fornication are found on a list compiled by the police department for this litigation. Appellees submitted copies of three summonses for individuals to appear on fornication charges. Four arrest records involving sodomy were also introduced. Because this case does not involve a challenge of the sodomy statute, Va.Code Sec. 18.2-361 (1982), we see no relevance in these arrests
 
 
 [2]
 Though the justiciability concepts of "standing" and "ripeness" are theoretically distinct, little is gained from an attempt to identify the particular doctrine at work in an individual case. Plaintiff's personal stake in the outcome (standing) is directly limited by the maturity of the harm (ripeness). In any event, both doctrines require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy
 
 
 [3]
 Federal courts, of course, must consider such constructions as part of state law. Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982)