David LYTLE, Jeanette Lytle, and Joan Maguire, Plaintiffs,

v.

Charles BREWER, individually and in his official capacity as Lieutenant of the Norfolk Police Department; Charles D. Griffith, Jr., in his official capacity as Norfolk Commonwealth Attorney, and Hon. James S. Gilmore, III, in his official capacity as Governor of the Commonwealth of Virginia, Defendants.

Civil Action No. 2:99cv1366.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 2, 1999.

Anthony Mulford, Davis & Brynteson, P.C., Chesapeake, VA, Scott D. Cardani, Richmond, VA, Michael J. DePrimo, Stephen M. Crampton, Brian Fahling, Ameri-

can Family Association Center for Law & Policy, Tupelo, MS, for plaintiffs.

Jack E. Cloud, Harold P. Juren, City Attorney's Office, Norfolk, VA, Kevin O. Barnard, Gregory E. Lucyk, William H. Hurd, Mark L. Earley, Alison P. Landry, Todd E. Lepage, Thomas J. Lambert, Office of the Attorney General, Richmond, VA, for defendants.

### ORDER AND OPINION

FRIEDMAN, District Judge.

This matter is before the Court on the plaintiffs', David and Jeanette Lytle and Joan Maguire's, motion for a preliminary injunction to prevent the defendants, Charles Brewer, Charles Griffith and Governor Gilmore, from enforcing Virginia Code Section 46.2–930. The challenged statute prohibits loitering on bridges where signs are posted pursuant to the direction of the Commissioner of the Virginia Department of Transportation (hereinafter VDOT). Va.Code.Ann. § 46.2–930.

This case has its genesis in events that occurred on July 16, 1999, at the Picadilly Overpass located at the intersection of Norview Avenue and Interstate 64 in Norfolk. The plaintiffs, who are Christians opposed to abortion, were at the Picadilly Overpass demonstrating their opposition to abortion when the Norfolk and State Police arrived and ordered them to cease pursuant to Virginia Code Section 46.2–930. The police threatened the plaintiffs with arrest should they continue to protest. After observing the Norfolk Police Department, lead by one of the named defendants, Lt. Charles Brewer, arrest two of their fellow demonstrators, the plaintiffs ceased their demonstration and left the overpass.

Following the July 16 demonstration and the arrest of two fellow protestors, the Commonwealth determined that the posting of the "No Loitering" sign at the Picadilly Overpass was in error. Based on this determination, on July 30, the Commonwealth notified the plaintiffs that "pending completion of a review by the Virginia Transportation Commissioner, Va.Code 46.2–930 will not be enforced by the State Police on any of the three pedestrian bridges or 'catwalks' in the Tidewater area." See Letter to plaintiffs' counsel, Mr. DiPrimo, from William Hurd, Senior Counsel, Virginia Attorney General's Office (dated August 2, 1999) (attached as Ex. C to Pl's Complaint). Also on July 30, Jack Cloud, an Assistant City Attorney, wrote to the plaintiffs to confirm that the City would suspend enforcement of the statute. See Letter from Cloud to plaintiffs' counsel, Mr. DePrimo (dated July 30, 1999).

Apparently unsatisfied with the written assurances provided by the Commonwealth and the City, on August 27, the plaintiffs filed the instant complaint against Charles Brewer, Charles Griffith, Norfolk's Commonwealth Attorney, and Governor Gilmore alleging six claims for relief under the First Amendment and the Fourteenth Amendment challenging the constitutionality of Virginia Code Section 46.2–930 and seeking injunctive and nominal monetary relief. The plaintiffs additionally filed a motion for a preliminary injunction, which is presently before the Court.

On October 7, the Court heard the plaintiffs' motion and took the matter under advisement.[1] Following the hearing, on October 8, Mr. Barnard, counsel for Governor Gilmore and Charles Griffith, notified the Court via written correspondence of additional assurances the Commonwealth

---

1. The evidence presented was limited to the exhibits attached to the plaintiffs' complaint, a video tape attached to a memorandum filed subsequently by the plaintiffs, the affidavit of the VDOT Assistant Commissioner, Claude Garver, and the affidavit of Charles Brewer. No objections were made to either the video tape or the affidavit, and the Court reviewed both following the hearing. The video tape includes the July 16 events at the Picadilly Overpass. The signs displayed by the plaintiffs and others are clearly shown in the video tape.

was willing to provide regarding enforcement of Section 46.2–930.

Based on the argument presented, the factual evidence, and the relevant law, and considering the assurances already provided by the Commonwealth and the City, the plaintiffs' motion for a preliminary injunction is hereby GRANTED.

### STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION

■■■ Fed.R.Civ.P. 65 provides the standard by which the Court must review a party's motion for a preliminary injunction. Specifically, in all cases, the movant bears the burden of proof on four independent factors:

(1) the likelihood of irreparable harm to movant if the opposing party is not enjoined;

(2) compared to the likelihood of irreparable harm to the opposing party if enjoined;

(3) the likelihood of movant's success on the merits of the claims; and

(4) whether the public interest favors the plaintiff or the defendant.

*See Manning v. Hunt,* 119 F.3d 254 (4th Cir.1997) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir.1991), and *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 193 (4th Cir. 1977)). The court in *Manning* stated that the district court must consider all of the factors in reaching its decision on a preliminary injunction. *Manning,* 119 F.3d at 263. Additionally, the court made clear that in all cases the district court should first consider the balancing of the harms. The court stated that "until the balance of the harms has been made, the district judge cannot know how strong and substantial must be the [movant's] showing of 'likelihood of success.'" *Manning,* 119 F.3d at 264. In all cases, the showing of irreparable injury must be immediate and actual—not remote or speculative. *Id.*

■■■ If the hardship balance favors the movant, then the likelihood of success factor is displaced and the movant must only show that the questions presented are serious, substantial and difficult enough to make them fair ground for the upcoming litigation. *See Direx,* 952 F.2d at 812–13. However, the converse is also true, and if the hardship balance weighs in favor of the respondent, then the movant has a stricter burden to show likelihood of success. *Manning,* 119 F.3d at 264. Finally, after balancing the harms, and determining the degree of substantial likelihood of success which is required and whether the movant has satisfied that burden, then, the court must consider whether a preliminary injunction is in the public's interest. *Manning,* 119 F.3d at 264.

### ANALYSIS

The basis of the plaintiffs' case is a constitutional challenge to the validity of a statute which prohibits loitering on bridges. The statute is simple and states as follows:

Pedestrians shall not loiter on any bridge on which the Commonwealth Transportation Commissioner has posted signs prohibiting such action. Any person violating the provisions of this section shall be guilty of a traffic infraction.

Va.Code Ann. § 46.2–930. The plaintiffs challenge the statute both on its face, and as applied.

### I. The Likelihood of Irreparable Harm to the Plaintiffs Absent An Injunction

■■ As set forth above, the plaintiffs are Christians opposed to abortion who desire to demonstrate their opposition in places such as the Picadilly Overpass or other highway overpasses or pedestrian crosswalks. The plaintiffs argue that because the statute is presently in place, and has been applied to similar activities in the past, *e.g.,* the arrest of their fellow protestors on July 16, there is a danger that they will be arrested for their "expressive" speech. The plaintiffs acknowledge that both the City and the Commonwealth have agreed to at least temporarily suspend en-

forcement of the challenged statute. However, the plaintiffs are dissatisfied with the terms of the voluntary suspension offered, and contend that their First Amendment rights are nonetheless infringed by the statute. The defendants dispute the plaintiffs asserted harm and argue that the need for an injunction is obviated by the assurances provided to the plaintiffs by both the City and the Commonwealth. Based on the assurances, the defendants argue that the plaintiffs can continue to protest in Norfolk while the suit is pending, and therefore, that the plaintiffs will not be "irreparably harmed" absent an injunction. To assess the likelihood of irreparable harm to the plaintiffs, the Court must review the adequacy of the assurances given by the defendants.

With regard to the City of Norfolk, its letter to the plaintiffs states that the City will not enforce Section 46.2–930, nor will it assist the State Police in enforcing the challenged statute. *See* Ex. B. to Pls' Complaint. The Commonwealth's assurances are not quite so clear. Instead, on August 2, the Commonwealth wrote the plaintiffs stating that it would not enforce the terms of Section 46.2–930 on the pedestrian crosswalks and "cat walks" within the "Tidewater area" until an official decision was made by the Commissioner of the VDOT regarding the applicability of the challenged statute. *See* Ex. C to Pls' Complaint.

At the hearing in this matter, the Court questioned the counsel for the Commonwealth on the assurances afforded to the plaintiffs by its letter of August 2. Apparently based on questions posed by the Court, on October 8 the Commonwealth notified the Court, and copied the plaintiffs' counsel, stating that the Assistant Commissioner for the VDOT, Claude Garver, agreed that "if he should decide to exercise his discretion to post any of these bridges as 'no loitering' he will delay the effective date of his decision for a period of 14 days from the date the decision is made." *See* Letter from Kevin Barnard of the Attorney General's Office to Judge Friedman (dated October 8, 1999). Garver

agreed to provide the Court and the plaintiffs' counsel with notice of any decision. *Id.* Additionally, and most significant in the Court's mind, Garver advised the Court that it would either cover or remove any of the signs posted in Norfolk until the effective date of any decision that signs be posted pursuant to Va.Code Section 46.2–930. *Id.*

■ Like the plaintiffs, this Court is unpersuaded that the defendants' assurances adequately protect the constitutional rights of the plaintiffs. It is clearly established that a loss First Amendment rights, even temporarily, constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (affirming Court of Appeals reversal of district court's denial of preliminary injunction and finding that violation of First Amendment even for a minimal period of time equates to irreparable injury for the purposes of a preliminary injunction). The Court is unconvinced that the defendants' assurances foreclose the likelihood of infringement of the plaintiffs' First and Fourteenth Amendment rights.

First, the indefinite duration of the assurances and the notice provided to the plaintiffs should the defendants elect to resume enforcement of the statute are not adequately established. While the City's letter if taken at face value could be read as indefinite in duration, it does not explicitly state that the City will never again enforce the statute. The second letter of October 8 from the Commonwealth cures some of the defects perceived by the plaintiffs and the Court from its original letter of August 2. For example, until the October 8 letter, it was unclear for what period of time the statute would not be enforced and how a demonstrator, such as the plaintiffs, would know whether or not they could legally demonstrate on bridges in the Commonwealth. The amended assurances state that the duration is until the Commissioner makes a decision, plus two weeks for notice to the Court and plaintiffs. Neither the duration nor the notice

provided to the plaintiffs sufficiently protect the plaintiffs' or third parties' First and Fourteenth Amendment rights. It is reasonable to assume that, regardless of the assurances provided for the purpose of this case, the plaintiffs and other unnamed third party protestors will be chilled in their exercise of protected speech due to either being unaware of the assurances or unconfident that the assurances remain in place on the date they decide to exercise their free speech.

Second, the geographic scope of the assurances is inadequate, at least on the part of the Commonwealth. Admittedly, the City's assurances in this regard are the best it could offer—it agrees to suspend enforcement in Norfolk, its jurisdiction. The Commonwealth's assurances are not so assuring. In the Commonwealth's first letter to the plaintiffs, they agree to suspend enforcement of the statute in the "Tidewater area." *See* Ex. C to Pls' Complaint. At the hearing in this matter, the Court questioned the Commonwealth as to the boundary of the "Tidewater area." Counsel for the Commonwealth responded that he was unsure as to the exact boundaries of Tidewater, and that he was not the drafter of the letter. However, he stated that he would assume that "Tidewater" meant Virginia Beach and Norfolk. The attorney's answer to this question posed by the Court demonstrates why the Commonwealth's assurances are insufficient. Anyone with a local connection to Norfolk and the surrounding area is familiar with the longtime debate regarding the definition of "Tidewater." While the Court is sure the term was used unwittingly by the Commonwealth's Senior Counsel William Hurd, it nonetheless demonstrates how a party relying on the assurances provided in the letter could easily be mislead into believing that they were protesting in an area covered by the letter, only to be arrested by a state police officer or local police not aware that his jurisdiction was considered part of "Tidewater." Furthermore, in the Commonwealth's second letter to the plaintiffs, the Commonwealth does not rescind the first offer of suspension in the "Tidewater area," yet it narrows the assurances only including "Norfolk." *See* Barnard's Letter (October 8, 1999).

Equally disturbing regarding the geographic limitations of the defendants' assurances, is that the plaintiffs in this case are not from Norfolk, where the assurances definitely apply. Rather, two of the plaintiffs, David and Jeanette Lytle, are from Lynchburg, Virginia, located in the western part of the state, and the third plaintiff, Joan Maguire, is from Virginia Beach. *See* Complaint at ¶¶ 5–7. Additionally, the claims in this case are not limited to the plaintiffs' stated desire to protest on a particular overpass in Norfolk. Aside from the fact that the plaintiffs have brought a facial challenge, the plaintiffs allege that they regularly exercise their First Amendment right to protest abortion "throughout Virginia at various locations on the public streets and sidewalks, both within and without (sic) Norfolk." Complaint at ¶ 21. They have expressed their desire to resume protests both at the Picadilly Overpass, "and at other overpasses throughout Virginia." Complaint at ¶ 22.

As set forth in *Richmond Medical Center for Women v. Gilmore*, 55 F.Supp.2d 441, 474–75 (E.D.Va.1999), "promises not to prosecute ... particularly where the record reflect[s] that the defendants' assurances [do] not encompass the breadth of the challenged provision," regularly are deemed inadequate and do not sway the courts. *Id.* (citing *ACLU v. The Florida Bar*, 999 F.2d 1486 (11th Cir. 1993)) (finding that defendants' response that the challenged canon cannot be constitutionally applied does not deprive the plaintiff of standing); *see also Eubanks v. Stengel*, 28 F.Supp.2d 1024, 1039 (W.D.Ky. 1998) (finding that promise not to enforce the statute to its full scope was unpersuasive to defendants' position). In this case, the Court finds that the defendants' assurances to suspend enforcement of the statute do not encompass the breadth of Sec-

tion 46.2–930. *Richmond Medical Center*, 55 F.Supp.2d at 474.

Clearly, the Commonwealth's October 8 attempt to assure the plaintiffs that they will not be harmed absent a preliminary injunction is more persuasive than their August 2 attempt. However, the Court is not persuaded, as the defendants suggest it should be, that the plaintiffs will suffer no irreparable injury absent an injunction. While there may be no credible threat of prosecution within the City of Norfolk, the assurances provide no protection to the plaintiffs or other third parties that may "loiter" outside of Norfolk. Similarly, in the October 8 letter from the defendants, the Commonwealth agrees to remove or cover the "no loitering" signs posted on bridges in Norfolk. However, no mention is made to the status of signs outside of Norfolk and throughout Virginia. Based on these deficiencies in the assurances, the plaintiffs cannot safely assume that they will not be arrested outside of Norfolk if they attempt to demonstrate on a bridge displaying a "no loitering" sign. *Id.*

For these reasons, the Court FINDS that, regardless of assurances provided by the defendants, the plaintiffs have established the likelihood of irreparable injury absent an injunction in this case. Therefore, the Court must determine what harm, if any, the defendants are likely to suffer if enjoined. After making that determination, the Court must balance the plaintiffs' harm with the defendants' harm to determine what degree of likelihood of success the plaintiffs must show to prevail in this matter, and then must determine if the plaintiffs have satisfied their burden regarding likelihood of success.

## II. *The Likelihood of Irreparable Harm to the Defendants*

### A. *Harm to the City Defendant*

■ The City defendant, Charles Brewer, did not argue in his memorandum regarding the harm he or the City will suffer if enjoined. At the hearing in this matter, the counsel for Brewer was specifically questioned by the Court regarding harm if enjoined. The counsel admitted that Brewer's (or the City's) harm would essentially be limited to a future claim by plaintiffs for attorney fees, if they are deemed the "the prevailing party." This perceived harm is minuscule, at best. The plaintiffs' success in receiving attorney fees from defendant Brewer, or the City of Norfolk, for this portion of the litigation is not before the Court, and to the extent that the plaintiffs seek fees, the Court can at that time take into consideration the fact that the City of Norfolk has without condition assured the plaintiffs that it will suspend its enforcement of the challenged statute. Therefore, for the purposes of decision on the motion for preliminary injunction, the Court finds that neither Brewer nor the City have any likelihood of harm, if enjoined.

### B. *Harm to The Commonwealth Defendants*

■ Unlike the City defendant, the Commonwealth defendants, Charles Griffith and Governor Gilmore, argue that the Commonwealth will be irreparably harmed by a preliminary injunction preventing the enforcement of this statute state-wide. The state defendants contend that they will be harmed by a potential injunction of Section 46.2–930 because it is "one of the tools available to the Commissioner [of VDOT] to promote safety on Virginia roadways." *See* Defs' Mem. at 8.

The plaintiffs do not dispute the Commonwealth's general interest in promoting public safety, especially on its roadways. However, the plaintiffs contend that the exercise of peaceful protected First Amendment speech never harms a defendants' legitimate interests, and therefore, that the defendants would suffer no harm if the Court grants the motion for preliminary injunction. Additionally, the plaintiffs argue that because the defendants have agreed to suspend enforcement of the statute, at least in Norfolk, their harm if enjoined, if any, would be minimal.

The Fourth Circuit in *Manning,* held that the state has an interest in being free from judicial interference, and the state's interests, including public safety, should be weighed in judging the harms to the parties. 119 F.3d at 264, 267. The issue of public safety on the roadways deeply concerns the Court. The Court is of the opinion that allowing pedestrians to demonstrate their views on overpasses, in an effort to attract the attention of motorists, poses a risk to the motorists passing under the bridges and undoubtedly traveling at a fast speed. *See* Affidavit of Charles Brewer at ¶¶ 4 and 9–11 (explaining rush hour circumstances on Picadilly Overpass on July 16, 1999); *see also* video tape of protest on July 16 showing the anti-abortion signs, which appeared to be several feet in height, held on overpass. It is unlikely that anyone would disagree that safety concerns for motorists would dictate the need for motorists to focus their attention on the roadway, and not the pedestrians above the roadway.

However, as the plaintiffs point out, no where in the statute is the concern for public safety demonstrated, and no facts were adduced at the hearing regarding the public safety aspect of the statute. Rather, in their briefs the Commonwealth explained that the challenged statute only applies to "a handful of bridges in the Commonwealth." *See* Defs' Memo; Affidavit of Claude Garver (October 7, 1999) (stating that no official decision was made to post a sign at the Picadilly Overpass). Furthermore, at the hearing the Commonwealth proffered to the Court that since the statute's enactment in 1966, the Commissioner of VDOT has not once taken action pursuant to the statute and made loitering illegal on a bridge.[2] *See* Affidavit of Charles Brewer, Norfolk Police Officer

¶ 2 (stating that prior to July 16, 1999, he was not aware of Virginia Code § 46.2–930). Finally, the defendants' alleged potential harm is further belied by their eager notification to the plaintiffs that the defendants would suspend enforcement of the statute on the Picadilly Overpass, and at other locations, thereby allowing protesting, notwithstanding their alleged concern for the safety of the motorists on Interstate 64. *See* Pls' Exs. B and C, and October 8 Letter from Commonwealth to Court; *see also* Brewer's Affidavit at ¶¶ 6–11 (describing circumstances of traffic on Interstate 64 beneath the Overpass, and protesting of plaintiffs and others). Based on all of this, the Court finds that the defendants' likelihood of harm, if any, is negligible.

Therefore, in balancing the harms, the Court is faced with likelihood of harm to the plaintiffs, and little to no harm to the defendants. Moreover, the potential harm to the plaintiffs, infringement on their constitutional rights, is monumental even if only experienced for a brief period. *Elrod,* 427 U.S. at 373, 96 S.Ct. 2673. As a result, the Court FINDS that the balance of harms tips decidedly in favor of the plaintiffs. Based on this finding, the Court must determine the plaintiffs' likelihood of success on the merits of their claims.

### III. *The Likelihood of the Plaintiffs' Success on the Merits*

Because the plaintiffs are more likely harmed by an adverse decision than the defendants, they have a lesser burden on likelihood of success on the merits than they would otherwise. *Direx,* 952 F.2d at 812–813. As set forth above, this case involves a challenge to the loitering statute

---

**2.** The Commonwealth asserts that no official decision was ever made to designate the Picadilly Overpass as a bridge covered by the terms of Section 46.2–930. *See* Garver Affidavit. They admit that there is a "no loitering" sign posted at the Overpass, but claim that the sign was posted in error. *Id.* The video tape provided by the plaintiffs includes statements by one of the protestors that they had protested on the same overpass for three years in a row, and that two years prior the police had arrived to discourage the protest but explained that no law prohibited the protest at that time. Apparently, sometime in the last two years, the no loitering sign was posted.

"on its face" and "as applied." *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Specifically, the plaintiffs' claims are as follows:

(1) In Count 1, the plaintiffs claim that the statute as applied and on its face is constitutionally overbroad and chills free speech;

(2) In Count II, the plaintiffs allege that the statute as applied and on its face chills the plaintiffs' and third parties' exercise of religion;

(3) In Count III, the plaintiffs contend that the statute on its face and as applied chills the plaintiffs' First and Fourteenth Amendment rights to free peaceful assembly;

(4) In Count IV, the plaintiffs claim that the statute as applied and facially violates the plaintiffs' and third parties' rights to freedom of association protected by the First and Fourteenth Amendments;

(5) In Count V, the plaintiffs allege that the statute as applied and facially violates the plaintiffs' and third parties' rights to freely move from one place to another guaranteed by the Fourteenth Amendment Due Process Clause; and finally,

(6) In Count VI, the plaintiffs contend that the statute is impermissibly vague in violation of the Fourteenth Amendment's Due Process Clause.

### A. *Standing*

 The defendants' primary argument regarding the plaintiffs' likelihood of success on the merits is that the plaintiffs lack standing.[3] The basis of the defendants' standing argument is that the plaintiffs do not have standing since they have not personally been arrested, and that the plaintiffs' mere fear of future arrests is not credible enough to form the basis of an Article III case and controversy based on the defendants' written agreement to the parties that they would voluntarily suspend enforcement of the challenged statute.

The Supreme Court in *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), set forth a three-part test to determine when a party has standing to challenge the constitutionality of a criminal statute. The Court held that a(1) the plaintiff must allege an intention to engage in constitutionally protected conduct, (2) the conduct must be proscribed by the statute, and (3) there must be a credible threat of prosecution under the statute. *Id.* The defendants concede that the plaintiffs can satisfy the first requirement of *United Farm Workers*, however, they argue that the cannot satisfy the final two requirements.

### 1. *Whether the Plaintiffs' Conduct is Proscribed*

As to the requirement that the statute proscribe the conduct which the plaintiffs seek to perform, the Commonwealth defendants argue that the statute only applies to a handful of bridges in Virginia, and by its own terms it applies only to those specifically designated by the VDOT. As set forth above, the defendants contend that the Commissioner of the VDOT has yet to exercise his authority to designate any bridge in the Commonwealth as a "no loitering" bridge, and therefore, the plaintiffs' picketing or demonstrating would never be illegal. This argument is blatantly incongruous based on the fact that, whether the Commonwealth has exercised its authority to designate the Picadilly Overpass as subject to the no loitering prohibition of Section 46.2–930, the plaintiffs were in fact threatened with arrest by state and local police and a fellow-protestor was arrested under the authority of

---

**3.** The City defendant's, Brewer's, opposition is limited to a standing argument. Since filing his opposition to the preliminary injunction motion, however, Brewer filed a motion to dismiss or for summary judgment. However, the arguments presented therein, which include qualified immunity, were not before the Court for consideration at the time of the hearing in this matter. This matter is set for hearings on summary judgment on November 3, 1999. The Court will take up the additional defenses asserted by Brewer at that time.

Section 46.2–930. Therefore, the Commonwealth's argument that the statute is inapplicable, and therefore, provides no credible threat to protestors, is not credible.

The plaintiffs contend that they seek to exercise their First Amendment rights on highway overpasses, a type of bridge. The defendants argue that the plaintiffs must identify a particular bridge where they seek to demonstrate and where loitering is prohibited. According to the defendants, because there are no bridges in the Commonwealth where loitering is legally prohibited, the plaintiffs cannot satisfy this requirement. However, regardless of whether the Commissioner of the VDOT has sanctioned the posting of "no loitering" signs pursuant to Va.Code Section 46.2–930, the Picadilly Overpass, where the incident leading to this case occurred, and presumably other bridges, do display signs notifying citizens that loitering is prohibited. In response to this, the defendants merely state that posted sign at the Picadilly Overpass was in error. As of the date of the hearing in this matter, the sign at the Picadilly Overpass was still posted. Relying on the assurances in the Commonwealth's letter of October 8, 1999, presumably the sign has now been either removed or covered. Nonetheless, the plaintiffs contend that the presence of signs, whether posted legally (with the authority of the Commissioner), creates a chilling effect on plaintiffs and other third parties interested in protesting on the bridges. This Court agrees. Because Section 46.2–930 is an existing law in the Commonwealth, there is a valid threat that the plaintiffs or others will be prosecuted under the terms of the statute should they protest on a bridge which posts a "no loitering" sign.

## 2. Whether There is a Credible Threat of Prosecution

The Commonwealth defendants · additionally argue under *United Farm Workers* that there is no credible threat of prosecution in this case. The defendants contend that the plaintiffs have not been arrested, and the threats of arrest are moot now based on the assurances provided by the defendants. The plaintiffs argue that the defendants' voluntary cessation of enforcing the ordinance does not invalidate the plaintiffs' standing to sue over the constitutionality of the ordinance.

 An individual is not required to be criminally prosecuted to have standing to constitutionally challenge an ordinance. However, the threat of injury from the ordinance must be "real and immediate, and not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding that prior arrest and choking did not create standing to allege that plaintiff might again be arrested and choked as basis for injunction against the City). A subjective chill of protected speech does not rise to the level of a judicially cognizable injury in fact. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Additionally, the threat of the enforcement of a statute does not arise simply because the ordinance can be read in a certain way which would theoretically allow for a prosecution. *See Washington Wilderness Coalition v. Walla Walla County*, 74 F.3d 1247, 1996 WL 21668 (9th Cir.1996) (unpublished); *Western Mining Council v. Watt*, 643 F.2d 618, 627 (9th Cir.1981) (finding that mere possibility of enforcement of mining law does not create standing for association), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir.1986) (reviewing ordinance which prohibited premarital sex and cohabitation and holding that the complete absence of prosecutions regarding the ordinance established that the plaintiffs should have no "fear of prosecution except those that are imaginary and speculative"). However, in some cases the threat of prosecution is enough. *See Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (finding that the plaintiff book sellers had standing even though the challenged ordinance had not been applied against them since the risk of

self-censorship based on the existence of the law created an injury in fact).[4]

In this case, the defendants' assurances only protect the plaintiffs and third parties who are aware of the letter and desire to protest within the City of Norfolk. The assurances have no implication as to whether other various branches of law enforcement, local law enforcement and otherwise, will attempt to enforce the statute, regardless of whether the signs posted, if any, are legally posted. As set forth above, in *Richmond Medical Center*, the court found that the promises not to prosecute doctors performing abortions neither eliminated standing nor made the matter moot. 55 F.Supp.2d at 474. The court relied on the fact that the assurances provided did not reach the entire breadth of the challenged statute.[5] *Id.* at 474–75. Similarly, in this case, for the reasons set forth above as to the plaintiffs' likelihood of irreparable harm, the Court finds there is a credible threat of prosecution.

The Supreme Court has upheld pre-enforcement challenges to criminal statutes where the plaintiff claims that First Amendment rights are at stake. *See, e.g., Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Clearly, the risk of chilling protected speech requires pre-enforcement review rather than awaiting prosecution as the sole

means to challenge a statute or vindicate a person's rights. *Northern Virginia Chapter, ACLU v. City of Alexandria,* 747 F.Supp. 324, 325 (E.D.Va.1990) (citations omitted) (allowing pre-enforcement review of Alexandria's loitering statute).

The defendants rely on the Fourth Circuit's decision in *Doe v. Duling,* which held that the plaintiffs did not have standing to challenge the constitutionality of an ordinance prohibiting fornication and cohabitation where there was no evidence that the statute had been enforced or that the plaintiffs had been threatened under the statute. *Doe v. Duling,* 782 F.2d at 1206–1207. The court characterized the arrest records for the challenged statute a matter of "historical curiosity" based on not one arrest involving the conduct the plaintiffs sought to engage in, *i.e.* cohabitation and fornication. *Id.*

Unlike the facts in *Doe,* this Court is unaware at this juncture in the litigation of how many "no loitering" signs are posted or on how many occasions persons have been threatened with arrest or charged under Section 46.2–930. However, it is undisputed that on at least one occasion Section 46.2–930 was enforced, *i.e.,* on July 16 when the plaintiffs were threatened with arrest and witnessed the arrest of their fellow protestors. Had the plaintiffs not ceased their protests, it is fair to assume that they also would have been arrested.[6]

---

**4.** This case is somewhat different from *American Booksellers* since there is an assurance from the state and local police that the statute will not be enforced. However, the language from *American Booksellers* is still persuasive.

**5.** The plaintiffs contend that because their challenges include a claim for overbreadth, the normal rules applicable to standing do not apply, *i.e.,* that they do not have to show that the activity that they suggested was actually protected speech, and that they can assert the constitutional rights of third parties not before the Court. The defendants rely on *Taxpayers for Vincent* in support of their argument that the plaintiffs' interests are no different from any other parties interests in the challenged statute, and therefore that they cannot prevail on their facial claims. *Taxpayers,* 466 U.S. at 799, 104 S.Ct. 2118. The plaintiffs argue that this case is distinguishable from *Taxpayers* since the conduct the

plaintiffs wish to pursue, essentially picketing on bridges, does not encompass other potential claims for other expressive conduct, such as leafleting, theatrics, speech making, sit-ins, etc. The defendants contend that for the plaintiffs to prevail on their facial challenges, the court must determine whether the statute's very existence intimidates the expression of free speech. 466 U.S. at 799, 104 S.Ct. 2118; *see also Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908 ("Where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep"). For the reasons set forth herein, the Court need not make these determinations at this time.

**6.** Furthermore, the time-line of the charges against the fellow protestors is curious. Apparently, the charges against the arrested protestors were ultimately nolle prossed in

*See* Video Tape of July 16 events. Therefore, the Court finds that, unlike the factual scenario at issue in *Doe*, in this case, there is a credible threat of prosecution, and indeed the plaintiffs have already been the target of such a prosecutorial effort by local and state police.

While the plaintiffs have received written assurances regarding when and where the City and Commonwealth will not enforce the ordinance, the assurances neither make the issue before the Court moot, nor do they deprive the plaintiffs of standing in this case. *Richmond Medical Center for Women*, 55 F.Supp.2d at 474–75 (finding that voluntary cessation of alleged illegal activity does not make case moot since defendant is free to return to old ways) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, n. 1, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)). Based on the Court's finding that the plaintiffs have standing, the Court must determine whether the plaintiffs have presented a serious question that has some likelihood of success on the merits.

### B. *The Underlying Merits*

As set forth above, the plaintiffs challenge the statute both as applied, and on its face. The plaintiffs' claims cover the range of potential challenges under the First Amendment (speech, expression, assemblage, and religion), and additionally challenge the statute as overbroad and vague under the Fourteenth Amendment's Due Process Clause. Based on the Court's finding that the balance of the harms tips decidedly in favor of the plaintiffs, the plaintiffs' burden on establishing the likelihood of success on the merits is less onerous than it otherwise might have been. *Direx*, 952 F.2d at 812. Because each of the six claims for relief request the same relief for a different legal reason, for

the plaintiffs to prevail in this case they need only show that they are entitled to relief under one of the six claims. Similarly, for the purposes of this motion, the Court need only determine that in one of the plaintiffs' six separate claims for relief, they have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* at 813.

The seriousness of the plaintiffs' claims is easily deduced by a review of the Supreme Court's recent decision in *Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 1858, 144 L.Ed.2d 67 (1999). In *Morales*, the Court held that when a statute is facially vague, there is no need to decide whether the impact of the statute on a constitutionally protected right alone would serve to invalidate the statute under the overbreadth doctrine or some other constitutional premises.

 In the plaintiffs' sixth claim for relief, they challenge Section 46.2–930 facially under the Fourteenth Amendment claiming that it is "void for vagueness." The void for vagueness doctrine protects individuals by requiring that laws be clearly drawn so that a reasonable person will know what is prohibited, and additionally protects citizens against arbitrary enforcement of laws. *Morales*, 527 U.S. at ——––——, 119 S.Ct. at 1858–59; *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (outlining vagueness standard and determining that ordinance which prohibited loud or disruptive behavior on lands adjacent to schools was not vague or overbroad). If either lack of notice to ordinary citizens as to what conduct is illegal, or arbitrary enforcement is risked in a statute, it is considered void for vagueness. *Morales*,

September when the matter came to trial. However, the charges remained viable after the letter regarding suspension of enforcement of the statute in Norfolk was sent to the plaintiffs on July 30. The defendants' counsel defended this mishap in the prosecution of the arrested protestor as a failed communica-

tion between the City Attorney's Office and the Police Department. It is exactly this type of snafu that concerns the Court regarding the threat of arrest or prosecution of the plaintiff protestors even in light of the good faith assurances of the defendants.

527 U.S. at ——, 119 S.Ct. at 1859 (citations omitted).

In *Morales*, the Supreme Court considered a loitering ordinance that prohibited loitering among gang members and held that "the freedom to loiter for an innocent purpose is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." 527 U.S. at ——, ——, 119 S.Ct. at 1853, 1857. The Court reviewed the challenged gang loitering law under the void for vagueness doctrine and determined that the ordinance was impermissibly vague based on its terms and the likelihood that an ordinary person would not know whether they were in violation of the ordinance and the likelihood of arbitrary enforcement. *Id.*

The defendants argue that Virginia Code Section 46.2–930 is clear on its face and prohibits loitering only on those bridges "designated by the Commissioner." Va.Code Ann. § 46.2–930. Unlike the ordinance challenged in *Morales*, Section 46.2–930 admittedly provides notice to persons as to where loitering is prohibited by the posting of a sign. Additionally, in this case, the protestors were given notice by the police that they were in violation prior to the police effectuating an arrest. *See* Video of July 16 events.

However, Section 46.2–930 provides absolutely no guidance or definition regarding what constitutes "loitering." The plaintiffs allege that prohibiting "loitering," without a more specific definition of what constitutes loitering, is void for vagueness.[7] As noted by the plaintiffs, Webster's Dictionary defines loitering as "to delay an activity with aimless idle stops and pauses; to remain in an area for no obvious reason; to lag behind." *See* Webster's Dictionary 10th Ed. (1997). Based on Webster's definition, the plaintiffs arguably were not loitering, regardless of the posted "no loitering" sign, when they participated in the protest on the Picadilly Overpass. Rather, it is clear from the video, that the plaintiffs had a specific purpose to their presence on the overpass, and were organized in their decision to protest with large professionally-made signs on a particular overpass during a certain time of day. The difference in the Webster's definition, the interpretation of loitering adopted by the police on July 16, and what the plaintiffs' believed their actions to constitute on July 16, is precisely why the challenged statute is vulnerable to an attack under the vagueness doctrine. Additionally, like the ordinance declared invalid by the Supreme Court in *Morales*, the statute challenged herein is a criminal law that contains no specific *mens rea* requirement. *Morales*, 527 U.S. at ——, 119 S.Ct. at 1858. "When vagueness permeates the text of such a law, it is subject to a facial attack." *Id.* (citations omitted). For these reasons, without specifically deciding the merits of the plaintiffs' Count VI or their five other claims, the Court is convinced that the plaintiffs have presented a serious enough question in Count VI for this Court to require further deliberation.

## IV. *The Public Interest*

 The plaintiffs argue that the public interest is always in favor of protecting legitimate First Amendment speech. Con-

---

7. The plaintiffs compare the facts in this case to *Coleman v. City of Richmond*, 5 Va.App. 459, 364 S.E.2d 239 (1988), where the Virginia Court of Appeals invalidated a Richmond ordinance on overbreadth and vagueness grounds notwithstanding the ordinance's specific intent requirement; *i.e.*, the statute proscribed loitering for purposes of engaging in prostitution and set forth three scenarios that might be considered by law enforcement. *Id.*, *reh'g denied*, 6 Va.App. 296, 368 S.E.2d 298 (1988). However, the statute challenged in *Coleman* involved loitering in public places generally, rather than limiting the loitering to bridges designated by the VDOT. Additionally, the *Coleman* ordinance did not provide notice to individuals regarding what was prohibited and where it was prohibited; as compared to Va.Code Ann. Section 46.2–930, which provides for the posting of a no loitering sign on designated bridges. Finally, the *Coleman* ordinance required that a person be given the opportunity to state his or her intentions prior to a law enforcement official determining whether an arrest was warranted for loitering.

versely, the defendants contend that based on the safety issues associated with enforcement of the statute, the public interest weighs in favor of denying the injunction. As set forth above, the Court does not make light of the safety concerns voiced by the defendants. However, whether this statute has at its roots a concern for public safety, is not evidenced in the record. Alternatively, whenever there is a possibility that constitutionally protected rights will be infringed by the chilling of free speech, the public interest weighs in favor of protecting the constitutional rights of the people. *See generally Elrod*, 427 U.S. at 373, 96 S.Ct. 2673. In this case, the governmental defendants have presented little, if any, basis for the Court to find that public safety will be impacted by a preliminary injunction in this case. *See supra* discussion of harms to defendants. The Commonwealth's bare assertions of public safety concerns without more in the record, coupled with their voluntary and unsolicited agreement to suspend enforcement in Norfolk (or the Tidewater area) does not outweigh the public interest of protecting First and Fourteenth Amendment rights.

### CONCLUSION

For the reasons set forth above, the Court FINDS that the balancing of harms tips decidedly in favor of the plaintiffs, that the plaintiffs have shown likelihood of success on the merits and that the public interest weighs in favor of granting an injunction. For these reasons, the Court hereby GRANTS the plaintiffs' motion for preliminary injunction.

The defendants are prohibited from enforcing Va.Code Ann. 46.2–930, which prohibits "loitering" on bridges designated by the Commissioner of the VDOT, throughout the Commonwealth. Additionally, the Commonwealth shall take no action to designate any bridges pursuant to this statute until, at the earliest, the resolution of this case, and then only if there is a resolution favorable to the defendants lifting the injunction. Moreover, the defendants are ORDERED to take immediate steps to cover or remove any signs purporting to prohibit "loitering" on "bridges" within the Commonwealth. Finally, acknowledging the lack of control the Commonwealth has concerning local law enforcement, the Commonwealth is ORDERED to take whatever steps are necessary and appropriate to notify local law enforcement within the Commonwealth regarding the substance of this Order and the fact that Va.Code Ann. § 46.2–930 is not enforceable until further notice.

It is so ORDERED.

The Clerk is DIRECTED to send a copy of this Order and Opinion to all counsel.